Ewing *et al. vs.* Moses.

THEODORE EWING, administrator, *et al.*, plaintiffs in error, *vs.* R. J. MOSES, administrator, defendant in error.

1. Whether answers to interrogatories which are claimed to be leading, shall be read, is a question resting in the sound discretion of the judge trying the cause, and this court will not overrule his judgment unless it be manifest that injustice has been done.

2. Where the main issue in a cause on trial was whether the defendant had procured a receipt in full from an heir-at-law by false representations, and it was in proof that he had written a certain letter to B, another of the heirs, and had in that letter directed B to communicate with the plaintiff, and that he had written letters to other heirs, referring to this letter to B, and the plaintiff, in her interrogatories, stated that in giving the receipt she acted on said letters, with a like one to herself, and attached to her answers the original letter to B:

*Held*, that it was not error in the judge to permit the answers and the original letter to B to go to the jury in evidence.

3. When under the charge of the judge the jury might count compound interest against a defendant according to law, yet, if the verdict is right counting only simple interest, it should not be disturbed.

Ewing *et al. vs.* Moses.

4. When substantial justice is done by a verdict this court will not grant a new trial for errors in the charge of the court, which, though not strictly correct, could not, under the facts of the case and the result, have injured the defendant's case before the jury.

Interrogatories. Evidence. Interest. New trial. Before Judge BARTLETT. Muscogee Superior Court. May Term, 1873.

Jean Smith Dawson filed her bill complaining of Theodore Ewing, administrator of William Matheson, James Rankin in his own right and as executor of William Rankin, Alexander Matheson and Elizabeth Ewing, formerly Matheson. She claimed to be one of the heirs of George Smith, a citizen of Georgia, who died intestate about 1841, leaving a large estate in Georgia, and that she was entitled to one-fifth and one-tenth of the estate. She alleged, in substance, as follows:

Kenneth McKenzie became administrator of George Smith and partly administered the estate. McKenzie died in 1854, leaving L. T. Downing, his executor. On the 2d of April, 1855, William Matheson, a nephew of George Smith, and who knew complainant was entitled to a distributive share, was appointed administrator *de bonis non* of George Smith, and gave bond with William and James Rankin as his securities, and who borrowed from him of the assets of the estate $15,000 00.

William Matheson, as such administrator, received from Downing, as the balance of the estate of George Smith, $28,-155 00, and during his life, which lasted one year, he wasted said estate, except $11,839 25, which was represented by the note of William Rankin, and another note of Woodruff & Gœtchius of $553 05, and which was received by Elizabeth Matheson, now Ewing, administratrix, she having been so appointed on the 12th of April, 1856, giving as her securities James and William Rankin, and Alexander Matheson. William Rankin has since died and James Rankin has qualified as his executor. Elizabeth Matheson returned to the ordinary a receipt, being a schedule of effects of George Smith,

found at the time William Matheson died, describing the above two notes. Immediately upon obtaining letters, and well knowing all the foregoing facts, and knowing that complainant was a widow, poor and aged, and living in Scotland, and wholly ignorant of the condition of said estate and her rights as distributee, the said Elizabeth Matheson, William and James Rankin, combined together for the purpose of defrauding complainant of her just rights and obtaining from her for $1,250—a discharge of all claims as the sister of George Smith. In pursuance of this intention, they caused Alexander Matheson, in whom complainant would confide implicitly, to write to her the following letter:

"COLUMBUS, GA., 14th April, 1856.

"MR. GEORGE ANDERSON:

"*Dear Cousin*—At the death of Kenneth McKenzie, my brother William was appointed by the court of ordinary administrator on the estate of George Smith, which office he held when he (William) died, and since his death his wife holds all the papers connected with the estate of George Smith.

"When my brother was alive, he contended that he was the only just heir to all the money here, and though he is dead, yet his claim is the same in the person of his wife and children, and they now claim it.

"By the law of this country, any person dying leaving real estate, and if said person has no heirs in the country, it goes to the *state* in which the real estate may be in at the time of the person's death. But if any heir should be in the country before his death, and that heir should become a citizen of the *United States*, he becomes rightful and only heir to all real estate, or proceeds therefrom, in preference to all other heirs, (though they may be nearer by blood,) or even in preference to the state. On the above grounds my brother, when alive, (and his wife now) contended that he was rightful heir to all money here, and it can be very clearly proved that the money

now here is the proceeds from real estate owned by George Smith at his death.

"You know that William was in the United States before our uncle's death, and that he became a citizen of the United States; you also know that he was the only one of all the heirs or relations of George Smith in this country at the time of George Smith's death, so by law, whenever William became a citizen he also became heir to all the real estate of George Smith or the proceeds therefrom.

"It is true that I am now in this country, and the only one in this country related to George Smith by blood, but my brother was before me, and was a citizen before I came, therefore I cannot claim anything; *you* cannot who are aliens.

"Since my brother's death, his wife has made a proposition to me as follows: She will give $5,000 00 upon condition that all the other claimants give up their claims to her; said $5,000 00 to be divided amongst said claimants, who are you, your brothers and sisters, aunt Jean, aunt Hutchin's children, and Jesse Duncan and myself; or to make the thing more plain, put them in families—say, Ann Anderson, Jean Dawson, Elizabeth Hutchins, Christian Matheson or children, ...... or children, ...... or children, (our uncle William dying without children or wife, therefore his claim amounts to nothing.) That would be $1,250 00 to be divided amongst each family. After receiving the above proposition I concluded to write you, and I would ask it as a personal favor of you, that you would let all the rest know of it. As for Jesse and Duncan, I will write them. I would most earnestly press upon you all to accept the proposition now made. I am here on the spot; I know all the circumstances of the case, and how the law is. I have stated the case truly. I am uninterested in any way, except in the proposition now made. Indeed, I may say it is mainly by my efforts such a proposition is now made. There is not more than $15,000 00 in all here, and that is in notes, etc., besides there is outstanding debts against the estate of considerable amount which is not settled, so that you see the amount specified is not such a bad one; it is more

than I expected when I first started the question, but no more will be given. Suppose you should go to law about it, would you receive more? No, not so much, even should you gain it, which you would not. What lawyer here of any account would undertake such a case?—certainly none would do it without their fee in their hands, you being in a foreign country. All the lawyers I have spoken to have persuaded me as friends not to go to law, for I could recover nothing, and I would have all the expenses to pay, which would not be little, for lawyers do not work for nothing in this section of the Union, and the court expenses are heavy.

"I leave the case now with you all. Decide as you please; do nothing hastily; consider on the matter—I have done so for years—you have my conclusion, which is: I am no heir by law, and can receive nothing except my share of the proposition now made to you. If you think fit to accept it, it will be well; but if you do not, I am authorized to say by William's wife that no more will be given; that this is the. first and the last proposition that will be made, and if you do not accept, you may go to law as soon as you please; she is and will be prepared for you, and I may add she has the means and the friends to law about it as long as you please. You should accept, and be glad that none is claimed that you have already got. If you go to law and collect, it is the law of Georgia decides the matter.

"If you should wish me to act for you or assist you in the matter, I will do so with pleasure. I have all along acted in this matter, even in my brother's lifetime, as your friend, and I am willing to do so now.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

"Yours, respectfully,
"ALEX. S. MATHESON."

Believing she could place full faith and credit in the assurances of her nephew, Alexander, and knowing that his opportunity of ascertaining the law and the facts were ample, she accepted the terms proposed by him, and on receiving the

Ewing *et al. vs.* Moses.

sum of $1,250 00 from him, did, in 1856, make a receipt of her claim and send it to Alexander Matheson, which money, in pursuance of such fraudulent intent, was advanced by William Rankin, out of the funds of George Smith, then in his hands. She rested under the conviction that the facts were all true, and the law bearing thereon was as stated in said letter, until very recently. And she charges that she has been deceived, and her receipt obtained by fraud in this, that by the law of Georgia, William Matheson was not the heir; that he did not arrive in Georgia until after the death of George Smith, he, the said Alexander, having stated as a fact that said William was a resident of Georgia before the death of George Smith. That by the laws of Georgia the property of said George Smith went to his next of kin, and that at the time complainant gave the receipt, she was entitled to $12,000 00, all of which was well known to defendants, and said facts were fraudulently concealed from complainant with the intent and for the purpose of obtaining a settlement at the nominal sum of $1,250 00.

Complainant prays for an account.

The defendants answered substantially as follows: Defendants say that William Matheson did in his lifetime set up a claim to the whole of George Smith's estate, on the ground that the said George was an alien, and the said William was the only relative who was in the United State at the time of his death, and that by the laws of Georgia the real estate descended to him. Complainant knew when William started for Georgia, and when the said George died, she being a grown woman, and the said Alexander only a small boy, and none of defendants deceived or attempted to deceive complainant as to the facts of the case.

Complainant better knew the facts than Alexander, who was then, and for a long time after the death of Smith, in Scotland. They admit the writing of the letter by Alexander, but deny that it was written or sent to complainant; they deny that it was written to deceive or mislead, but only to make known the grounds of the claim of William and the

proposition for a compromise. They deny that complainant was misled or deceived by the letter. They deny that complainant acted on the statements in said letter as to the law, but say she was informed by others that the law was different; that the said Alexander, in good faith, stated the law as he was informed and believed it to be. That complainant did not sign the receipt under any mistake as to her being an heir of George Smith or not entitled to a part of his estate, under the law of Georgia, and say that she was fully informed, and had been recognized as an heir, and had received large sums from McKenzie as such heir; that she was fully advised as to her rights in the premises. They deny any misrepresentations as to the amount of the estate which came to the hands of said Elizabeth. They admit the writing of the letter by William Matheson, and say its contents were known to complainant before signing the receipt. They say the settlement was made and the receipt given after full information as to her rights, and after full consideration; that it was made because of the controversy which had arisen between William Matheson and the next of kin of George Smith, as to who was entitled to the estate of George Smith, and as a compromise of the claim of complainant as an heir, and they claim the settlement to be a bar to complainant.

James Rankin, as executor of William Rankin, deceased, filed a sworn plea, containing the following admissions:

That before and at the time that William Matheson became administrator, he claimed to be entitled to all the proceeds of the real estate of George Smith; that William and James Rankin owed to Lemuel T. Downing, as executor of Kenneth McKenzie, $14,843 00, by a promissory note, and in order to pay said note it was agreed by all parties that the said William Rankin should give his note for a like sum, payable to William Matheson *individually*, and that the said Matheson should receive the same as cash from Lemuel T. Downing, executor; that this was done; that he paid Matheson, on account, this note, $5,300 00, which Matheson, to the extent of $3,300 00, invested in negroes, as he considered himself enti-

tled to it; that he refused to pay Theodore Ewing, adminis-
trator, anything on said note, except certain amounts which
went to the payment of the heirs.

The complainant died pending the litigation, and R. J.
Moses, her administrator, was made a party in her place.

The depositions of Jean Smith Dawson were tendered in
evidence. The fourth and fifth interrogatories were objected
to as leading. They were as follows:

"4th. If Jean Dawson ever gave to Theodore Ewing, or
any one else, a receipt in full for her portion of the estate of
George Smith, deceased, state to whom said receipt was given,
the consideration received for giving said receipt, and the rep-
resentations made to Jean Dawson by which she was induced
to give such receipt. If you have any letters from Theodore
Ewing or James Rankin, or from Alexander Matheson, which
induced the giving of said receipt, attach the originals to your
answers."

"5th. If you state any misrepresentations were made to
Jean Dawson, by which she was induced to give said receipt,
after stating what they were and who they were made by,
state whether, but for those representations, you would have
given the receipt?"

ANSWERS.

To the fourth interrogatory she answers: "I sent through
Mr. James Lawson, banker, Huntley, a receipt, I think, in full
for my portion of the estate of the deceased, George Smith.
Alexander Matheson, Columbus, was the person who made
the offer, in writing, from America, which was $1,250 00, or
two hundred and fifty pounds sterling, and he sent on the re-
ceipt through Mr. Lawson, banker, Huntley, for my signa-
ture. I do not remember in whose favor the receipt was
taken. The money was sent over to this country after the re-
ceipt was sent back to America, signed. A copy of the offer,
namely, that sent to George Anderson, (similar to that made
to me and others) is sent herewith. The representations which
were in that offer, as also similar representations in letters

written by the said Alexander Matheson to Jesse Matheson, Huntley, his sister, Barbara Johnston, his cousin, to myself, and the said James Lawson, induced me to accept the offer. Matheson is my nephew, and I had great confidence in him. I lent him a large sum of money (£100) on his leaving this country for America, and I had not any reason to distrust him.

To the fifth interrogatory she answers: "That but for the above representations I would not have granted the receipt. I first discovered such statements were misrepresentations when William Lawson went out from this country to America about the beginning of the year 1867."

The complainant relied upon several letters written by the defendant, Alexander Matheson, the one to George Anderson, set forth in the bill, one to his sister, and one to his cousin. They were objected to on the ground that they were not addressed to Jean Smith Dawson, and there was no evidence that she had seen them before giving the receipt.

These letters were to the other heirs of George Smith's estate, in which he referred to the letter of George Anderson as containing the offers of compromise proposed by his sister-in-law, the administratrix, and urging their prompt acceptance. To the depositions of Jean Smith Dawson was attached the letter to George Anderson.

The objections were overruled and the defendants excepted.

The court, in its charge, authorized the jury to compound the interest on the amount found to be due to complainant, as provided in section 2603 of the Code. To which the defendants excepted.

The jury found for the complainant $13,315 25. Error is assigned upon each of the aforesaid grounds of exceptions.

PEABODY & BRANNON, for plaintiffs in error.

R. J. MOSES; M. H. BLANDFORD, for defendant.

McCay, Judge.

1. We are not clear that the questions objected to are leading. But we *are* clear that there was no abuse of the discretion of the court in permitting the answers to be read. Unless a very great change is made in the mode of executing interrogatories, the rule against leading questions must be very liberally interpreted in such cases. The party must ask all his questions at once. He must base one upon the answer he expects to another, and the witness who always has an opportunity of reading over the whole, can, if he desires, easily get the drift of the questions. Why be so precise as to the form when this broad road is open in all cases? This is one of the evils of the system and can only be met by weighing all testimony thus taken with caution.

2. Taking all the witness says together, and especially considering the contents of the letter to George Anderson, and the letters to the other parties including that to Matheson's sister, we think it pretty plain that the letter to George Anderson was sent as a sort of circular to all, and that the copy—as the witness calls it—was a duplicate of the original sent to her. As by the terms of the letter sent, George was to communicate with her, we think the evidence of this being a duplicate is sufficiently plain to justify and excuse any further explanation as to the letter to the witness. That this is the letter sent to her is not perfectly clear, but sufficiently so, we think, to permit the answers to be read.

3. We do not think a verdict allowing compound interest as prescribed for settlements with trustees in section 2603 of the Revised Code, would be proper, and the charge of the court is objectionable on this point, first, because this section of the Code was suspended during the war; and, secondly, because we think the section applies to suits against trustees proper, and not to suits against administrators of trustees, for failures after the death of the trustee. The act contemplates that the trustee is acting, using the funds, and failing to report the interest he is making, by yearly returns, and

compound interest is put upon him as a penalty for this fail-
ure, and on the presumption that he collects the interest an-
nually and reinvests it.   But in calculating the amount re-
ceived, and comparing that with the verdict, we find the
plaintiff entitled to the verdict, even though only simple in-
terest be charged.   The charge, therefore, did no harm if the
verdict is right on the main ground.

4. The principal issue on trial was whether the receipt was
procured by fraud.   Even if, as defendant contends, it was
taken as the result of a compromise, yet, if the fact upon
which the doubtful point of the law arose was a plain, pal-
pable falsehood, known to the party stating it, even a compro-
mise thus settling the dispute would be a fraud.   As the facts
appear, here was a nephew in whom the aunt confided, in a
far country, writing home to his venerable relative whom he
knew trusted him implicitly, stating a lie, what he knew to
be a lie, and on this, getting up a doubtful question of law,
which the old lady, taking the fact for true, compromised.
Was not this a fraud?   We think so.   Taking all these let-
ters together, and adding the lame explanation given by the
writer on the stand, and we think the verdict clearly right.
The law as to the compromise of doubtful rights, is only by
the very largest charity applicable to the case, and we think
the judge right in giving very little prominence to it.   There
is some language in the charge that is not strictly correct.   He
should have said "and" instead of "or," in connecting the
sentence as to the difference between the amount due and the
amount of the receipt and the reliance of the plaintiff on the
false representations.   But the verdict is so much in accord
with the evidence and the principles of justice that we will
not disturb it for this error of the court, which is, perhaps,
only at last a clerical error.

Judgment affirmed.