## HOLMES *v.* CLISBY.

1. Statements published in good faith by one to protect his own interests in a matter where he is concerned, as well as to protect the interests of another whom he represents as agent, are privileged, when the character of the publication is such as to make it reasonably necessary, under the circumstances, to accomplish the desired purpose.
2. A wilful falsehood can not be uttered in good faith, and therefore can never be the subject of a privileged communication.
3. Negligence in failing to ascertain the meaning and effect of a writing, before a publication of the same under circumstances where it would be injurious to the character or reputation of another, is so inconsistent with good faith as to prevent the communication from being privileged as a statement in the performance of a private duty, or a statement by the writer to protect his own interests in a matter where he is concerned.
4. The general rule is that the question of libel or no libel is one of fact for a jury. Especially is this true when the writing is not a libel per se, but its character as such depends upon the circumstances under which it was published.
5. Upon proof of the publication of a writing which is libelous on account of the circumstances under which it was published, a presumption arises that the party libeled is innocent of the charge therein preferred, and an inference is raised that the publisher was actuated by malice.
6. Evidence which may be insufficient to so establish good faith as to sustain a plea of privilege in an action for a libel may still be sufficient to rebut the inference of malice and mitigate the damages.
7. The judge should explain to the jury the meaning of technical terms which occur in his instructions, but a failure to do so will not generally be ground for a new trial, in the absence of an appropriate and timely written request for such explanation.
8. Whether answers to interrogatories which are claimed to be leading shall be read is a question resting in the sound discretion of the trial judge, and this discretion will not be controlled unless it is manifest that injustice has been done.
9. In the trial of an action for libel it is error for the judge to fail to instruct the jury on the law of nominal damages, when the evidence in the case is of such a character that under no view of it would a general verdict for the defendant be authorized. This is true even though there be no written request for instructions on such subject.

Argued October 25, — Decided November 11, 1904.

| 121 | 241 |
| 122 | 221 |
| 121 | 241 |
| 124 | 202 |
| 121 | 241 |
| f129 | 291 |
| 129 | 409 |
| 130 | 599 |

Action of libel.    Before Judge Hodges.    City court of Macon. August 12, 1904.

Holmes brought an action of libel against Clisby, complaining of a publication of which the following is a copy:

"LADIES OF MACON.          QUEEN QUALITY.

" We hereby give notice that the firm of Clisby and McKay is our only authorized agent in Macon for the sale of genuine QUEEN QUALITY shoes under our guarantee.    Our damaged shoes we sell to certain dealers under an agreement that they shall be sold as imperfect goods; as we are not willing that damaged or second quality shoes of our make shall be offered to the public as first quality, even when the damage is not apparent to the eye. Those who buy Queen Quality shoes of other dealers than those designated by us as our authorized agents will have only themselves to blame for any disappointment or loss that may ensue.

Thomas G. Plant Co."

The petition was dismissed on demurrer, and this judgment was reversed by the Supreme Court at the October term, 1903. 118 *Ga.* 820.    A trial was afterwards had, and a verdict found for the defendant.    The plaintiff again sued out a writ of error, assigning error upon a judgment overruling his motion for a new trial.    It appears that, prior to the publication of the communication above set out, Holmes, the plaintiff, had advertised that he would sell Queen Quality shoes at a reduced price, Holmes having purchased the stock of a former agent of the Thomas G. Plant Company.    The defendant answered, denying the material averments of the petition, and filed what is claimed to be a plea of privilege, its allegations being, in substance, as follows:    Defendant had a contract with the Thomas G. Plant Company, whereby he was given the exclusive right to sell Queen Quality shoes in Macon.    This contract was in force at the time of the publication of the communication complained of.    Defendant was advised that plaintiff had purchased certain bills of spring and summer Queen Quality shoes which the Strong Shoe Company, defendant's predecessor as Macon agent of these shoes, had in stock.    Defendant purchased no spring and summer Queen Quality shoes, because he did not wish to interfere with plaintiff.    Defendant was advised and believed that certain shoes of the Plant Company

manufacture, but inferior to those stamped Queen Quality, were sold generally to the trade in Macon and throughout the country, and that there was great danger of such shoes being confused with the Queen Quality shoes. Under defendant's contract, the Plant Company agreed to furnish certain advertising matter and pay for the insertion of the same. On the opening of the fall and winter season, defendant received from the Plant Company the advertisement complained of, with instructions to publish the same. The advertisement was on a form prepared for Boston, Massachusetts, and defendant was advised and believes it is the same in substance as was used generally as an advertisement by the Plant Company on the beginning of a contract with a new agent. Defendant published the advertisement for the purpose of announcing that his firm was the exclusive agent in Macon for the sale of Queen Quality shoes, and to prevent any possible confusion in the mind of the public between those shoes and shoes of an inferior quality of the Plant Company's manufacture. The publication was without malice, and with no intention of reflecting upon the plaintiff or his business. If the publication did in fact injure the plaintiff, defendant is not liable in damages, because it was made with the bona fide intent on his part to protect his own interest in a matter where it was concerned, and was also made in the performance of a private duty, to protect the business interest of his principal, the Thomas G. Plant Company.

Other material facts are stated in the opinion.

*Jere Moore, Marion W. Harris,* and *Dessau, Harris & Harris,* for plaintiff. *Steed & Ryals* and *Lane & Park,* for defendant.

COBB, J. 1, 2. When this case was before this court on a former occasion it was said: " That the publication was intended to refer to the plaintiff can not, in view of the allegations of the petition, admit of doubt. If one reading the publication knew that it referred to the plaintiff, knew that he was selling Queen Quality shoes at a reduced price, the inference was irresistible that he was selling damaged goods; and when this is coupled with the further fact that the plaintiff had advertised that his goods were perfect and undamaged, the conclusion is well warranted that the author of the publication intended to charge that the plaintiff's advertisement was false, and that in inserting the

advertisement he was guilty of a deliberate falsehood and intended thereby to cheat and defraud the ladies of Macon who were likely to become his customers." 118 *Ga.* 823–4. The defendant in his answer denies that the publication referred to the plaintiff or was intended to refer to him. He claims that he was advised that certain shoes manufactured by the Plant Company, but inferior to those stamped Queen Quality, were sold generally to the trade in Macon and throughout the country, and that there was great danger of such shoes being confused with Queen Quality shoes, in the sale of which the defendant was interested; that the advertisement was furnished him by the Plant Company, and was published by him in good faith to protect his own interests as the seller of the Queen Quality shoes, and also in the discharge of the private duty owing to his principal, the Plant Company, to protect its business interests. If there were persons in Macon, or elsewhere, who were selling shoes of the Plant Company, which were imperfect or damaged, as perfect shoes of the Queen Quality stamp, then the defendant had a right, as the seller of the genuine Queen Quality shoes, and as the agent of the Plant Company, to communicate this fact to the public. If in his communication to the public he used such words only as were appropriate and necessary to accomplish the desired end, that is, to place the public on notice that they were liable to be deceived, and the communication was made in good faith in the belief that the statements therein were true, it would be properly classed as one which was privileged under the law, and the defendant would not be liable to one who was engaged in selling in Macon the genuine Queen Quality shoes, unless it appeared from the publication and the circumstances under which it was made that what was stated in the advertisement, taken in connection with the circumstances, must have been intended to apply to such seller, and when so applied could have no other meaning than that such seller was selling damaged shoes of the Plant Company as perfect Queen Quality shoes, and that the defendant knew at the time of the publication that the shoes sold by the plaintiff as Queen Quality shoes were in fact perfect shoes of that brand. If the communication was of the character above indicated, and published under the circumstances referred to, it could not be properly classed as privileged as against the

seller of the genuine Queen Quality shoe, who was known to be such by the publisher of the advertisement; for such a communication, under such circumstances, would contain a wilful falsehood. Such a falsehood is always inconsistent with good faith, and is never privileged either in law or morals. *Etchison* v. *Pergerson*, 88 *Ga.* 621 (4). The plea of privilege was good in substance, although it may have been subject to special demurrer. Hence the court did not err in instructing the jury in reference to the law of privileged communications.

3. Did the evidence sustain the plea of privilege? The defendant testified that he did not write the advertisement; that it was furnished to him by the Plant Company on a form which had been used in Boston and in a number of other places; that while he read it before he had it published, he did not read with a great deal of care; that he presumed it was simply a notice of a change of agency; and that he did not have the plaintiff in mind at the time of the publication, nor was it the result of the cut-price sale had by the plaintiff. The defendant admits that he knew that the plaintiff was selling genuine Queen Quality shoes. The evidence conclusively shows that the plaintiff was the only person, except the defendant, engaged in the sale of these shoes in Macon. The evidence is of such a character as to almost demonstrate with certainty that at the time of the publication any one in Macon, who had any information in reference to the shoe market, could not reach any other conclusion upon reading the advertisement than that it was intended to apply to the plaintiff so far as it referred to the sale of Queen Quality shoes. There may have been others in Macon engaged in the sale of other brands of shoes of the Plant Company's manufacture, but the plaintiff was the only seller of the genuine Queen Quality shoes that the advertisement could possibly apply to. But the defendant in effect says that "the plaintiff was not in my mind; I was not thinking of him; I was not thinking of his cut-price sale; the publication was to protect my principal and myself against those unscrupulous persons who were engaged in the sale of damaged shoes as perfect Queen Quality shoes." If the advertisement was intended simply as a notice to the public that the Plant Company had changed its agents, both the Plant Company and its agent were doubly unfortunate in the language employed to convey this in-

formation to the public, as well as the time when and the circumstances under which this fact was published. It can not be said, under the testimony, that the defendant has published about the plaintiff that which he knew to be false, but under the testimony the question arises whether, in not informing himself as to the true meaning of the advertisement as applied to the circumstances under which it was to be published, he is not guilty of such negligence and such an utter disregard of the rights of others that his alleged good faith would no more protect him than it would if he had made the publication with a full knowledge of its meaning and effect. One who knowingly discharges a loaded gun into a crowd, and thereby destroys human life, is guilty of crime, although he may not know the person whose life is taken. If one points a gun at a crowd and does everything necessary to discharge it, and it is actually discharged and injures another, he will not be held blameless although he in good faith believes that the gun is not loaded. And one who recklessly handles a loaded gun under such circumstances that, if discharged, human life might be destroyed, is guilty of manslaughter, if the gun is discharged and another is killed, although he have no intention to kill and no intention to discharge the gun. One who wilfully discharges a libel at a community will be held responsible to any one whom it may injure, although he may be a stranger to the libeler; and it would seem, upon principles of common sense and justice, that one who, without exercising due care to ascertain the meaning and effect of a writing which is libelous of a class, publishes it under circumstances where it would be construed as applicable to one or more persons of such class, should not be held blameless upon the plea that he did not know that it was harmful in its nature, when the exercise of the slightest care and the application of the slightest intelligence would have demonstrated that its publication would be harmful to some who were within the range of its effect. It is immaterial "whether he who disperses a libel knew anything of the contents or effects of it or not." 6 Bac. Ab. 354; 3 Gr. Ev. (16th ed.) § 171. We do not think that the evidence, taken as a whole, was sufficient to sustain the plea of privilege.

4. In the trial of an action for libel the judge should instruct the jury as to what constitutes a libel under the law, and then

leave to their determination the question whether the language of the writing complained of is libelous, if it is claimed that the libel appears upon the face of the writing; or, if claimed to be a libel only when taken in connection with the circumstances of its publication, the jury should be directed to determine· from the writing and the circumstances of its publication whether it was libelous.    The general rule is that it is a question for the jury to determine whether the writing complained of is libelous or not, and only in cases where a crime is distinctly charged, if at all, should the jury be instructed that the writing is a libel.    See *Beazley* v. *Reid*, 68 *Ga.* 380; *Baker* v. *State*, 97 *Ga.* 453 (7); *Colvard* v. *Black*, 110 *Ga.* 646.

5. Error was assigned upon the following instruction: "It is essential to the existence of a proof of a libel in a court of law for the evidence to show the falsity of the libel, the malice contained in the libel, the defamation tending to injure the reputation of the petitioner and exposing him to public hatred, contempt, or ridicule, and the publication of the libel itself." It is insisted that this charge was erroneous, for the reason that it placed upon the plaintiff the burden of proving that the charge contained in the alleged libelous writing was false, and that it was maliciously published.    If this instruction can be so interpreted, of course it is erroneous.    If a writing charges another with doing an act which is calculated to expose him to public hatred, contempt, or ridicule, the law will presume that the charge was false, because persons are not, as a general rule, guilty of such acts.    Especially would such a presumption arise in a case where the writing charged the commission of a crime; the presumption of innocence which arises in such cases being in effect a presumption that the charge was false.    Men are presumed to be innocent of criminal, disreputable, or otherwise disgraceful conduct; and when one is charged with such conduct, the law infers from the character of the charge that he who makes it is moved by malice to prefer it. It is therefore incumbent upon the plaintiff in a suit for libel to prove the publication of a writing which is susceptible of being construed to be a libel, and the law immediately raises in his behalf a presumption that he is innocent of the charge and that the disperser of the libel was actuated by malice.    The judge evidently had in mind the principles just referred to, but the

charge complained of was not altogether free from misleading features.

6. The defendant was permitted to prove that he obtained the advertisement from the Plant Company in Boston, and that it had been used in Boston and in other places; and was also permitted to prove how the Plant Company sold Queen Quality shoes and shoes of other brands, and what disposition was made of imperfectly made shoes; and was also permitted to introduce the contract with the Plant Company in reference to the sale of the Queen Quality shoes, and evidence as to the agencies of the Plant Company in Macon. All of this evidence was objected to by the plaintiff, upon the ground that it was irrelevant and immaterial. In actions for libel, while the law infers malice from the character of the charge, the defendant is allowed to rebut this inference by proof; and the evidence objected to was of such a character as might have had some bearing on this question. While it would not be sufficient of itself to establish good faith so as to discharge the defendant under his plea of privilege, still all of it might be considered on the question of malice and in mitigation of damages.

7. Complaint is made that the court erred in failing to explain to the jury the expressions, " mitigation of damages," and " privileged communications," each of which occurs a number of times in the charge. There was no request for an instruction in reference to these matters. The average legal mind does not always carry a correct idea of the various words and phrases which have a technical meaning in the law. Hence it is not to be expected that the unprofessional men of the jury can, without explanation, grasp the meaning of such expressions. It is therefore the better practice in all cases for the judge to explain to the jury the meaning of such expressions when they occur in his instructions. Failure to do so, however, will not generally, in the absence of a timely and appropriate written request, be a ground for a new trial. See *Roberts* v. *State*, 114 *Ga.* 450 (3).

8. A witness for the defendant was examined by written interrogatories. The plaintiff, in due time and in the proper manner, filed written objections to certain of the interrogatories, on the ground that they were leading. Notwithstanding such objections the court allowed the answers to be read. It is now thoroughly

settled that the allowance of leading questions is within the discretion of the judge; and especially is this true where the witness is examined by written interrogatories. See the remarks of Judge McCay in *Ewing* v. *Moses*, 51 *Ga.* 410, 419. See also *Franks* v. *Lumber Co.*, 111 *Ga.* 87; and cases cited in 4 Enc. Dig. Ga. R. 455.

9. Under no view of the case does it seem to us that the defendant was entitled to a verdict. The plaintiff was entitled to at least nominal damages, that is, a sum sufficient to carry the costs. Whether there should be a recovery for an amount greater than this we express no opinion. The defendant admitted the publication of the article complained of. The evidence demanded a finding that, when published under the circumstances indicated by the evidence, the ordinary reader of the Macon paper, who knew that the plaintiff was engaged in the sale of Queen Quality shoes, and was the only dealer interested in the sale of such shoes, except the defendant, would at once reach the conclusion, not only that the article referred to the plaintiff, but that it was intended to charge him with selling defective shoes as perfect shoes of the Queen Quality brand. In other words, the evidence demanded a finding that the article, published under the circumstances existing at the time of the publication, was a libel, and was a libel upon the plaintiff. The evidence authorized a finding that the defendant was not actuated by malice. Under such circumstances, the jury were authorized to mitigate the damages, even to the extent of reducing them to a mere nominal sum; but they were not authorized to find a general verdict for the defendant, for the reason that the only plea upon which such a verdict would have been warranted was a plea of privilege, and the proof failed to establish this plea. It was error for the judge to fail to instruct the jury in reference to the law of nominal damages, even though there was no written request for such an instruction.

The foregoing part of this opinion disposes of all the questions which require any elaborate discussion. There was no error in allowing the defendant to show by a witness who was in the employment of the Plant Company what was the meaning intended to be conveyed by the use of the expressions, "as damaged shoes" and "imperfect goods," which appear in the libelous publication. The reference by the judge in his charge to an admis-

sion in the petition in favor of Clisby was evidently an inadvert-
ence, as there was no such admission.    The code declares that in
a suit for libel malice "is inferred" from the character of the
charge.    Civil Code, § 3833.    The judge in his instructions said
malice "may be inferred."    This was an inaccuracy and was pos-
sibly harmless, but the better rule would be to follow the exact
language of the code.    Complaint was also made of other portions
of the charge, which are not necessary to be referred to.    While
some of them might be subject to the criticism that they were
misleading, none of them contain errors of such a character as to
require a reversal.    On another trial the judge will no doubt
relieve the charge of all such portions as may be subject to
criticism.          *Judgment reversed.    All the Justices concur.*