A93A0280. FLY v. KROGER COMPANY et al.

(432 SE2d 664)

BLACKBURN, Judge.

The appellant/plaintiff, Karen Fly, brought the instant defamation action against appellees/defendants, The Kroger Company (Kroger), her employer, and Faye Beckham, Robert Woods, Doug Spence, Carlton Meadows, Jr., and Becky Anderson, employees of Kroger, for the false and malicious publication of incriminating statements which indicated that she had tampered with certain price labels in order to shoplift the merchandise from the Kroger store where she was employed. After the commencement of discovery, the defendants moved for summary judgment, cogently asserting that any conversations made by Kroger and the named employees were not published. The trial court granted the defendants' motion for summary judgment as the essential element of publication was lacking, and this appeal followed.

Construed in the light most favorable to Fly, the record reveals that on September 12, 1989, she worked in one of defendant Kroger's stores from 5:00 a.m. until 2:00 p.m. After the completion of her shift, she remained on the store premises for the purpose of purchasing groceries. While shopping, Fly asked defendant Spence, a meat department employee, about the current price specials within the department. Based on Fly's inquiry, defendant Spence gave Fly two steaks that were on sale at a reduced price per pound. Thereafter, Fly left the meat department with the steaks, and continued shopping in other areas of the store. She later returned to the meat department and discovered two round steaks that each had been reduced by 75 cents. Fly returned the steaks that had been given to her by defendant Spence to the meat bin, and instead selected the recently discovered round steaks. After purchasing her groceries, which included the two reduced round steaks, Fly left the store premises. Defendant Beckham, the cashier that assisted Fly with her purchases, and defendant Anderson, another employee, later questioned defendant Spence about the steaks that Fly had purchased. According to his af-

fidavit submitted in support of the motion for summary judgment, he informed defendants Beckham and Anderson that there had not been any meat products on sale on that day. As a result of their concern about the possible improper markdown of the meats that Fly had purchased, defendants Beckham, Anderson and Spence reported the purchases to store manager Terry Millinger.[1]

Upon her return to work the next day, Fly was taken upstairs to the manager's office and questioned by store manager Millinger about her meat purchases. The union's shop steward was present during this meeting along with defendants Wood and Meadows, who were also store managers.[2] Defendants Spence, Anderson and Beckham averred in their affidavits that they likewise attended the grievance meeting and answered management's questions about Fly's meat purchases. Fly maintains that defendants Spence, Anderson, and Beckham were each individually requested by management to give their version of the incident outside of the presence of the other. Although the incident was discussed at the grievance meeting, defendants Beckham, Wood, Spence, Meadows, and Anderson, denied discussing the topic of the meeting with anyone outside of management, union officials, and the employees who had personal knowledge of the alleged improper purchases. Defendant Spence, however, admitted further discussing the incident with the police officers that investigated alleged threats that Fly had made against him. After the meeting of September 13, 1989, Fly was suspended from work and subsequently resigned. She admitted that she never returned to the store as a customer after September 12, 1989, and solely returned to the store to attend grievance meetings with management.

During her deposition, Fly could not provide the names of any individuals that she knew had discussed the accusations but she was aware of rumors circulating throughout the store indicating that she had stolen packages of meats. She merely speculated that the employees had been gossiping about her and in fact, no one had spoken to her about the incident. Fly did not know if defendants Beckham, Woods, or Anderson had discussed the markdown incident with anyone. Although she was aware that defendant Meadows had informed other employees to keep their eyes out for her, she was unaware of any discussions defendant Meadows may have had about the incident.

1. In enumerations 1 through 7 and enumeration 9, Fly contends

---

[1] Defendant Kroger's store rules and regulations provide that it is the "duty and responsibility of every employee who has knowledge of a dishonest act to discuss it with the Management of the store or report it to the Security Department for further investigation."

[2] It is a standard procedure at Kroger for the union steward to be present when management discusses a possible rule violation with an employee.

that material issues of fact remain as to her slander claim and, accordingly, the trial court erred in summarily granting judgment in favor of the defendants. We disagree.

" 'Slander or oral defamation consists in: (1) Imputing to another a crime punishable by law. . . .' OCGA § 51-5-4 (a) (1). 'Publication is indispensable to recover for slander. (Cit.)' [Cit.] Generally, publication is accomplished by communication of the slander to anyone other than the person slandered. [Cit.] Over the years, however, an exception to the broad definition of publication has evolved: when the communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive information, there is no publication of the allegedly slanderous material, and without publication, there is no cause of action for slander. [Cits.] The legal fiction that no publication has occurred when the above criteria are met is based on the sentiment that '(s)tatements by either in the hearing of the other concerning such matters are the legal equivalent of speaking only to one's self. . . .' [Cit.]" *Kurtz v. Williams*, 188 Ga. App. 14, 15 (371 SE2d 878) (1988).

In the case sub judice, those who heard the accusations made against Fly were managers, who had a duty and the authority to receive the information about her allegedly improper actions, and a union representative, whom she invited to the meeting and who was under a duty to be present as a representative of Fly's union. Further, defendants Spence, Anderson, and Beckham, presented the allegations to management pursuant to defendant Kroger's requirement that they report any dishonest acts of co-employees. It was appropriate for those individuals to attend the grievance meeting, which was held outside of the presence of the other employees, and where the allegations of theft were properly asserted in an investigatory manner. Although Fly contends that the assertions were maliciously made, "[w]hether the communication was made maliciously and with knowledge of falsity is immaterial when there has been no publication, for without publication there is no libel or slander. [Cits.]" Id. at 16. Fly further asserts that the communications between the defendants were not privileged. "However, before a plaintiff reaches the questions of conditional privilege and loss thereof, the plaintiff must prove the elements of the tort, including publication." Id. It is undisputed that Fly has not demonstrated that any defamatory remarks were published to any individual outside of those individuals involved in the investigation of the allegations. Inasmuch as there was no publication, summary judgment in favor of the defendants was proper.

2. In enumeration 8, Fly further asserts that the trial court erred in determining that statements made by defendant Spence to police officers investigating her alleged threats against him were privileged.

However, "[s]tatements made in good faith pursuant to investigation by police or other officers authorized to investigate crime or criminal activity are made in the performance of a public duty and are privileged. [OCGA § 51-5-7 (1).] If such were not the case these officers would find it virtually impossible to ferret out the facts and prosecute those who have violated the criminal laws. It is difficult at best, but the law does not put roadblocks before those who may have information and prevent the communication of it to the officers. Indeed, it is made the duty of one having such information to report it to those in authority. [Cit.]" *Hardaway v. Sherman Enterprises*, 133 Ga. App. 181, 182 (210 SE2d 363) (1974). Although Fly asserts that the statements made by defendant Spence were not made in good faith, Fly has not "point[ed] to specific evidence giving rise to a triable issue" on defendant Spence's lack of good faith in informing the investigating officers of the allegations that she shoplifted the merchandise. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Inasmuch as defendant Spence informed the officers of the incident which resulted in the threats made against him by Fly, and the information was disclosed in an effort to assist the officers with the investigation, this enumeration is without merit.

3. We reject the arguments that Fly asserts in enumerations 10 and 11 that defendant Kroger was liable for its tortious misconduct as she was a customer-invitee. "The concept of 'tortious misconduct' thus denotes a limited exception to the applicability of the rule that a corporation may not be held liable for unauthorized, unratified slander by one of its agents." *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 259 (3) (345 SE2d 924) (1986). Pretermitting the issue of Fly's status at the time that she made her purchases, Fly has not shown that she was subjected to "abusive, opprobrious, insulting, or slanderous language by an agent of [defendant Kroger]. [Cits.]" Id. Accordingly, summary judgment in favor of defendant Kroger was proper.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 16, 1993.

*Manely & Silvo, Michael E. Manely, Lorraine R. Silvo*, for appellant.

*Smith, Gambrell & Russell, John T. Sparks, David A. Handley*, for appellees.