## A97A2591. LUCKEY v. GIOIA.
(496 SE2d 539)

Judge Harold R. Banke.

Deborah E. Luckey, R.N. appeals the summary judgment awarded to Bruce Gioia, M.D. in her libel action against him.

On April 6, 1995, Luckey and Gioia were working in the emergency room at McDuffie County Hospital. Although Gioia worked at five other hospitals' emergency rooms, this was his first night working at the McDuffie County Hospital ("Hospital"). Luckey was a Hospital employee while Gioia was a contract physician working for a different employer, Coastal Emergency Services.

At approximately 9:50 p.m., the McDuffie County E.M.S. brought into the emergency room a pregnant 15-year-old patient with complaints of vaginal bleeding. The patient was briefly admitted to the Hospital through the emergency room and placed in room 303. According to Luckey's testimony, after the patient had been admitted but before she could be medically stabilized, Gioia instructed the E.M.S. personnel to load her back into the ambulance and to transport her to St. Joseph's Hospital in Augusta. Gioia did not complete any transfer or discharge papers as required by Hospital policies and procedures. Luckey testified that when she realized that Gioia was "dumping" the patient on another hospital in violation of rules and procedures, she confronted him.[1] When the patient arrived at St. Joseph's emergency room under Gioia's orders, St. Joseph's staff was outraged that the Hospital had sent them a medically unstable patient.

At some point between the night of the transfer and about six weeks later, Douglas Keir, the Hospital administrator, asked Gioia to respond to Luckey's nurse's notes which stated that Gioia did not call a report or complete the transfer papers, and that St. Joseph's emergency room personnel were upset that "we transferred an unstable pt. [sic]." In his explanatory letter of May 22 to Keir, Gioia attempted to exonerate himself and blame Luckey for the improper patient transfer. Gioia stated that about an hour after he transferred the patient, he received a phone call from a very upset nurse at St. Joseph's about "my transferring an 'unstable patient' to them." He blamed Luckey for the transfer and claimed that she had offered no objection to the transfer and led him to believe that he was operating according to proper procedure. He wrote, "I had no idea I was to fill

---

[1] The Emergency Medical Treatment & Active Labor Act ("EMTALA") contains strict procedural requirements governing the examination and treatment of emergency medical conditions and women in labor. 42 USC § 1395dd. EMTALA, also known as the "Anti-Patient Dumping Act," mandates medical screening and necessary stabilization treatment before transfer. 42 USC § 1395dd (a), (b).

out any transport documentation." Gioia claimed that Luckey's "documentation is erroneous and beyond incorrect to the point of fabrication." He accused Luckey of unprofessional conduct and "betray[ing] the essence of her profession — integrity and trust." He also threatened to bring formal charges of misconduct and slander against her. Keir acknowledged receiving the letter and passing it on to Belinda Campbell, the Hospital's director of human resources. The Hospital terminated Luckey about six weeks after Gioia's response letter.[2] Luckey did not learn about Gioia's letter until the day after the Hospital terminated her when she was permitted to see her personnel file.[3] Luckey testified that Campbell told her she had been terminated based upon the complaints in her personnel file. According to Campbell, the letter had no role in the Hospital's decision to discharge Luckey. Keir testified that because Luckey had a history of complaints from patients, the Hospital decided to end her employment.

The trial court determined that because Gioia's written statement was not "published" when it was given to the hospital administrator, Luckey's action for libel was foreclosed. The court also found that because the statement at issue was conditionally privileged by OCGA § 51-5-7 (3), no action would lie for malice. OCGA §§ 51-5-9; 51-5-5. Finally, the court determined that Luckey failed to prove actual malice sufficient to overcome the statutory privilege. *Held*:

1. Luckey contends that the trial court erred in holding that the letter was not "published." In order to recover for libel, a libelous communication must be published. OCGA § 51-5-1 (b). "A libel is published as soon as it is communicated to any person other than the party libeled." OCGA § 51-5-3. But the publication of allegedly defamatory information in the course of an employer's investigation of an employee's job performance, when made to persons in authority, is not "publication" within the meaning of OCGA § 51-5-1 (b). *Kurtz v. Williams*, 188 Ga. App. 14, 15 (3) (371 SE2d 878) (1988); *Williams v. Cook*, 192 Ga. App. 811, 812 (1) (386 SE2d 665) (1989); see *Monahan v. Sims*, 163 Ga. App. 354, 358 (1) (294 SE2d 548) (1982).

After Luckey accused Gioia of "patient dumping," Gioia accused

---

[2] EMTALA subjects a participating hospital which negligently violates its requirements to a civil money penalty of not more than $50,000 (or not more than $25,000 in the case where a hospital has fewer than 100 beds). 42 USC § 1395dd (d) (1) (A). It also exposes a physician "who is responsible for the examination, treatment, or transfer of an individual in a participating hospital . . . who negligently violates a requirement of this section . . . to a civil penalty of not more than $50,000 for each such violation." 42 USC § 1395dd (d) (1) (B).

[3] Whether the Hospital or Gioia violated the Anti-Patient Dumping Act is not at issue here. Inasmuch as the Hospital is not a party to the instant action, whether the Hospital violated the whistle blower protection provision of this statute when it terminated Luckey is not before us. 42 USC § 1395dd (i).

Luckey of improper and unprofessional conduct. The Hospital had a duty to resolve these serious accusations. It is absolutely undisputed that Gioia, who was Luckey's immediate supervisor at the time of the incident, provided the letter only to Keir, the Hospital administrator, who communicated it only to Campbell, the director of human resources. The record is devoid of any evidence that the letter at issue was shown to anyone who did not need to see it for employment purposes. *Fly v. Kroger Co.*, 209 Ga. App. 75, 77 (1) (432 SE2d 664) (1993). Notwithstanding Luckey's unsupported contention to the contrary, the fact that she was a Hospital employee and Gioia was an independent contractor does not demand a different outcome. See *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 258 (1) (345 SE2d 924) (1986) (no publication where communication made only to those whose duties and responsibilities entitle them to see it). To hold otherwise could impede legitimate inquiries by employers into employee conduct. See *LuAllen v. Home Mission Bd. &c.*, 125 Ga. App. 456, 459 (2) (188 SE2d 138) (1972).

In the absence of any evidence of publication, an essential element of an action for libel, summary judgment was proper. *Fly*, 209 Ga. App. at 77 (1); *Lepard v. Robb*, 201 Ga. App. 41, 43 (1) (410 SE2d 160) (1991). See also *Kenney v. Gilmore*, 195 Ga. App. 407, 408 (1) (393 SE2d 472) (1990).

The sole authority upon which the dissent relies, *Duchess Chenilles, Inc. v. Masters*, 84 Ga. App. 822 (67 SE2d 600) (1951), neither demands nor authorizes a different result. In *Masters*, unlike here, the defamatory statement was not made only to proper persons but was communicated outside of employment channels to two of the plaintiff's neighbors. *Masters*, 84 Ga. App. at 830 (4).

To implement the dissent's recommendation of allowing the instant litigation to proceed would necessitate abandoning the sound public policy of insulating from litigation comments made during employment investigations and would require overruling a long line of established authority. *Williams v. Cook*, 192 Ga. App. at 812 (1); *Kurtz v. Williams*, 188 Ga. App. at 15; *Madden-Lee v. Day's Inns &c.*, 184 Ga. App. 485, 486 (361 SE2d 714) (1987) (Statements made to supervisors whose job responsibility requires them to be knowledgeable about job performance are not considered to be published); *Hodges v. Tomberlin*, 170 Ga. App. 842, 843 (1) (319 SE2d 11) (1984); *Jones v. J. C. Penney Co.*, 164 Ga. App. 432, 434 (297 SE2d 339) (1982); *Monahan v. Sims*, 163 Ga. App. at 358 (1); *Jackson v. Douglas County Elec. &c. Corp.*, 150 Ga. App. 523, 524 (1) (A) (258 SE2d 152) (1979); *Land v. Delta Airlines*, 147 Ga. App. 738 (2) (250 SE2d 188) (1978); *LuAllen*, 125 Ga. App. at 457 (2) (a); *Garrett v. Lockheed Aircraft Corp.*, 98 Ga. App. 443, 445-446 (106 SE2d 333) (1958).

Although the dissent mistakenly asserts that Gioia's defense

should not be governed by the maxim "Volenti non fit injuria," that principle is neither mentioned nor applied in the instant case. That maxim is an affirmative defense whereby: "[I]f one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery." Black's Law Dictionary (5th ed.). Because Luckey is missing an essential element of her prima facie case, i.e., any evidence of publication within the meaning of OCGA § 51-5-1 (b), addressing possible defenses is superfluous. *Kurtz*, 188 Ga. App. at 15 (3).

2. Having determined that the letter was not published within the meaning of OCGA § 51-5-1 (b), we need not reach Luckey's remaining enumerations of error.

*Judgment affirmed. Andrews, C. J., Birdsong, P. J., Smith and Ruffin, JJ., concur. McMurray, P. J., and Eldridge, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

Because the majority's holding stretches precepts underlying Georgia's "invited libel" doctrine and thereby avoids application of rules governing this State's qualified immunity doctrine, I am compelled to dissent.

I cannot go along with the majority's logic that Dr. Gioia's harsh views and accusations against Nurse Luckey were not legally "published" because the doctor directed them to a Hospital administrator. The majority's holding is founded on cases which invoke "public policy" to justify the rule that defamatory comments are not actionable when rendered during an employer's investigation of an employee's job performance. See *Fly v. Kroger Co.*, 209 Ga. App. 75, 76 (1) (432 SE2d 664); *Lepard v. Robb*, 201 Ga. App. 41, 42 (1) (410 SE2d 160); *Kenney v. Gilmore*, 195 Ga. App. 407, 408 (1) (393 SE2d 472); *Williams v. Cook*, 192 Ga. App. 811 (1) (386 SE2d 665); *Kurtz v. Williams*, 188 Ga. App. 14 (3) (371 SE2d 878); *Monahan v. Sims*, 163 Ga. App. 354, 357 (1) (294 SE2d 548), and *LuAllen v. Home Mission Bd. &c.*, 125 Ga. App. 456, 459 (2) (188 SE2d 138).[4] The problem I see in applying this rule in the case sub judice is that the Hospital was not investigating Luckey's job performance when its administrator asked Gioia to respond to the nurse's report that the doctor had "dumped" a

---

[4] These decisions appear to evolve from the common law maxim, " 'Volenti non fit injuria' (meaning that to which a person assents is not in law an injury)[. That is, a party injured, even by a maliciously false report,] can not complain where . . . it is shown that he . . . invited or brought upon himself what he claims is a defamation, made to one who has been placed, as it were, in his own shoes." *Beck v. Oden*, 64 Ga. App. 407, 411 (13 SE2d 468). The Supreme Court referred to the precept as "invited libel. *King v. Masson*, 148 Ga. App. 229 (A) (1) (251 SE2d 107) (1978); *Beck v. Oden*, [supra]." *Ga. Power Co. v. Busbin*, 249 Ga. 180, 181 (289 SE2d 514).

pregnant and medically unstable 15-year-old emergency room patient.[5] The Hospital's investigation focused only on Gioia's alleged violation of hospital policy and federal law — The Emergency Medical Treatment & Active Labor Act, 42 USC § 1395dd. Punishing Luckey for reporting what she believed was a violation of these standards by cutting off her right for a jury to hear her defamation claim is, in my view, not good "public policy." On the contrary, such policy undermines the intent and purpose of 42 USC § 1395dd.

I believe that Georgia's "public policy" is best served, under the circumstances in the case sub judice, by allowing a jury to resolve the parties' opposing claims. Specifically, Gioia's defense should not be governed by the maxim, "Volenti non fit injuria," but should be measured under appropriate rules governing Georgia's qualified immunity doctrine — which requires proof that Gioia uttered his harsh words against Luckey in good faith and with an interest to be upheld; that the doctor's statements were properly limited in scope; that the doctor uttered the words during a proper occasion, and that he published them only to proper persons. See *Duchess Chenilles, Inc. v. Masters*, 84 Ga. App. 822 (67 SE2d 600). Applying this test in the case sub judice, I find the content, tone and potential self-serving motive behind Gioia's letter against Luckey sufficient to raise genuine issues of material fact as to whether the doctor acted maliciously in transmitting the letter to the Hospital's administrator. I believe that saying otherwise chills any incentive for hospital employees to report infractions under federal law and private policies that are designed to protect helpless (and possibly disadvantaged) emergency room patients.

Moreover, I am in full agreement with and concur fully with Judge Eldridge's dissent.

ELDRIDGE, Judge, dissenting.

I respectfully dissent.

While I fully concur with Presiding Judge McMurray's dissent, I am compelled to point out some critical facts that have been mischaracterized in error.

Dr. Gioia's letter was not written in response to a personnel investigation of Nurse Luckey, because he was not her supervisor, but she at most was his temporary borrowed servant; the investigation by the hospital administrator was in response to serious charges that the hospital had violated federal law in dumping a patient and could be exposed to liability to the patient and to the federal govern-

---

[5] Indeed, Hospital Administrator Keir and the Hospital's human resources director, Belinda Campbell, deposed that Luckey's discharge was not related to Gioia's response to her report of the July 10, 1995 emergency room incident.

ment and that he might be responsible as the independent contractor. The hospital administrator first became aware of the charge of dumping through complaints from the outraged staff of St. Joseph Hospital, upon whom the patient had been dumped. The hospital administrator looked at the patient's records to find out what had occurred at the McDuffie County Hospital and found Luckey's notes placing the responsibility on Gioia. Thus, at the time the hospital administrator requested a written explanation of Gioia, it was the acts or omissions of Gioia that were in question in regard to the dumping and not a personnel investigation of Luckey.

Gioia's letter was to cover his own acts or omissions by shifting the blame to his accuser, Luckey. If the facts and allegations are not true in the letter, then the contents attacked Luckey professionally and constituted libel per se. Thus, Gioia sought to shift the blame and instigated the inquiry into the fitness of Luckey. The inquiry as to the personnel matter was not instituted by the hospital administrator and was not a personnel inquiry until a later date. Thus, Gioia's letter to the hospital administrator was a publication, was intentional, and exhibited actual malice, because the letter sought outside of any qualified privilege to blame her in order to exonerate Gioia, which would not be privileged if false. Gioia was neither an agent nor an employee of the hospital when he wrote the letter to the hospital administrator so that he cannot claim non-publication as a communication within the corporation, because he was a third person to the hospital and Luckey. When he went beyond the defense of his own action and sought to blame and to question the professional skill of the plaintiff, any conditional privilege was exceeded, and malice negated the privilege as well. *Carter v. Willowrun Condo. Assn.*, 179 Ga. App. 257, 258 (1) (345 SE2d 924) (1986). This decision does not stand for the legal proposition that an independent contractor cannot make a publication when written matter is sent to the employer. Under OCGA § 51-2-4, the torts of an independent contractor cannot be imputed to the employer; likewise, the communication of an independent contractor is not the same as an agent, servant, or employee, because the legal relationship is not the same. The lawyer for the condo association at the direction of the officers of the association wrote a complaint letter to the lessor about the plaintiff-lessee's conduct, which affected both the association members as well as the lessor; the lawyer was acting as the agent of the association so that his acts were the acts of the association.

In this case, the independent contractor was not acting either as employee or agent of the hospital but was acting in his own behalf. In defense of himself and to shift blame, Gioia accused plaintiff of the conduct that he was charged by her with doing himself. This was not a qualified privileged matter under OCGA § 51-5-7 (3) as in *Carter*.

Where there is actual malice, there is no conditional privilege. *Fedderwitz v. Lamb*, 195 Ga. 691 (25 SE2d 414) (1943). Wilful falsehood negates any good faith privilege. *Holmes v. Clisby*, 121 Ga. 241 (48 SE 934) (1904). Thus, there exists a factual question as to the existence of the conditional privilege.

I am authorized to state that Presiding Judge McMurray concurs fully with this dissent.

DECIDED FEBRUARY 3, 1998

*Craig T. Jones*, for appellant.
*Fowler & Wills, Samuel A. Fowler, Jr.*, for appellee.