A99A2038. MULLINAX et al. v. MILLER et al.
(531 SE2d 390)

RUFFIN, Judge.

Plaintiffs Don Mullinax and Roy Dobbs, public officials in Pickens County, filed a libel action against a former candidate for county commissioner, Cheryl Sams, and her campaign committee chairman,

---

C. Mark Miller, based on a statement in one of Sams' newspaper campaign ads. Miller won summary judgment on the ground that he did not publish the statement in question. Because there was no evidence that Miller exercised any control over the content of the statement, we affirm.

Under the standard of *Lau's Corp. v. Haskins*,[1] Miller was entitled to summary judgment if he showed an absence of evidence in the record to support an essential element of the plaintiffs' case.[2] We review the trial court's grant of summary judgment de novo, viewing the evidence and all reasonable inferences from it in favor of plaintiffs.[3]

So viewed, the record shows as follows. In 1996, Sams ran against incumbent Mullinax for the position of Pickens County Commissioner. On September 19, 1996, an advertisement paid for by the Committee to Elect Cheryl Sams appeared in the Pickens County Progress newspaper. The ad criticized Mullinax and Dobbs, an employee of the Board of Tax Assessors, for their alleged treatment of Pickens County resident Ola Ann Brown. According to the ad, Brown purchased property in Pickens County on which the 1995 taxes had been paid, but — unbeknownst to her — the county claimed after the closing that the taxes had not been paid properly and placed a lien on her property for the money. The ad stated that Brown "never found out that *Roy Dobbs and Don Mullinax had stolen the taxes from her property* until she read a legal notice in the Pickens County Progress." (Emphasis supplied.)

Mullinax and Dobbs sued Sams and Miller for libel per se based on the use of the word "stolen" in the ad. They alleged that the sentence containing that word falsely accused them of committing a crime. Miller denied writing the ad or publishing the challenged statement.

Sams testified at her deposition and by affidavit that she, and she alone, wrote and published the ad. She explained that she first learned about Brown's situation from a friend with whom she was discussing ideas for campaign ads. The friend told her that Miller, an attorney, had handled the closing when Brown purchased the property.[4] Sams questioned Miller, who told her he would need Brown's permission before releasing any information for use in an ad. Brown apparently agreed, and Miller arranged a telephone call between himself, Sams, and Brown. Sams testified that Brown, not Miller, supplied the information for the ad. Although Sams used a computer

---

[1] 261 Ga. 491 (405 SE2d 474) (1991).
[2] *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 686 (500 SE2d 1) (1998).
[3] Id.
[4] According to Miller, he represented the mortgagee bank, not Brown.

at Miller's law office to compose the ad and directed one of Miller's staff to deliver it to the newspaper, she stated: "I wrote the ad. I paid for the ad out of campaign funds. I signed the check. It is my ad." She further stated that she decided to use the word "stolen" in the ad to describe the actions of Mullinax and Dobbs after consulting a dictionary. Finally, Sams stated that Miller was not involved in any way with writing or editing the ad. Sams did not know, however, if Miller reviewed the ad before it went to the newspaper.

Like Sams, Miller testified that he did not write, publish, or pay for the ad. At his deposition, however, Miller refused to state whether he gave Sams any information for the ad or saw the ad before publication. Miller asserted the attorney-client privilege, claiming that he served as the lawyer for the Committee to Elect Cheryl Sams and that details about the preparation of the ad were privileged communications.[5]

Nearly one year after Miller's deposition — and two weeks after Miller moved for summary judgment — the plaintiffs filed a motion to compel discovery, challenging Miller's assertion of the attorney-client privilege. In its order granting summary judgment to Miller, the trial court denied the motion to compel without explanation. Plaintiffs appeal both rulings.

1. Plaintiffs argue that the trial court should have granted their motion to compel. We disagree.

"The trial courts have broad discretion to determine what is and what is not discoverable, and this court will not interfere with those decisions absent a clear abuse."[6] As Miller points out, plaintiffs waited more than ten months after Miller's deposition and two weeks after Miller filed his motion for summary judgment before asking the court to rule on his assertion of the attorney-client privilege. Plaintiffs' motion to compel contains no explanation for this delay. Although we have found no rule setting a specific time limit for bringing a motion to compel under these circumstances, Uniform Superior Court Rule 5 provides that a party must pursue discovery promptly, diligently, and "without unnecessary delay" in order to take advantage of the court's compulsory process to compel discovery. That rule also states that the court has discretion to shorten the time for a party to utilize the court's compulsory process to compel discovery. As plaintiffs' unexplained ten-month delay in filing their motion to compel shows a lack of promptness and diligence, we cannot say that the trial court clearly abused its discretion in denying the motion.

---

[5] Sams denied that Miller did legal work for the campaign committee.

[6] *Smith v. U-Haul Co. Ga.*, 225 Ga. App. 356, 357 (1) (484 SE2d 49) (1997).

2. Plaintiffs also argue that the trial court erred in granting summary judgment to Miller on their libel claim. Once again, we disagree.

A libel is "a false and malicious defamation of another, expressed in print [or] writing . . . , tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1 (a). To be actionable, the libel must be "published" — i.e., communicated to a third party.[7] There is no question that the allegedly libelous sentence stating that plaintiffs "stole" Brown's taxes was published in the local newspaper. The issue, rather, is whether *Miller* published it. Plaintiffs have the burden of proving that he did so.[8]

This case presents the question of what it means to "publish" a statement, in the context of the libel laws. We are aware of no Georgia cases examining precisely which actions a person must take to be labeled a "publisher." We have held, however, that "[p]ublication entails the ability to *control* the libel."[9] At a minimum, therefore, we think plaintiffs must prove that Miller exercised some control over the sentence containing the word "stolen" in the ad. Miller clearly could be liable if he wrote the offending sentence himself or directed someone else to write it, knowing that it would be printed. He could also be liable, perhaps, if he approved the sentence after someone else wrote it or if he paid for the article. But Miller *cannot* be liable for playing some lesser role — such as contributing background information for the article or allowing Sams to use his office to write the ad and his employees to deliver it to the paper — that did not entail controlling the content of the ad. This is especially true because the background information regarding the real estate transaction is not what is alleged to be libelous here; the alleged libel, rather, lies in the term used to describe that transaction.

With this framework in mind, we find that plaintiffs failed to present any evidence that Miller exercised the requisite degree of control. Sams testified unequivocally that she alone wrote the ad, including the word "stolen." Miller likewise testified that he did not write the ad. None of the evidence identified by plaintiffs contradicts this testimony or suggests that Miller had any control over the offending statement.

In support of their position, plaintiffs first point to the affidavit of John Trammell, who stated that he talked to Miller the day after the ad appeared in the paper and that Miller said he "and some

---

[7] OCGA § 51-5-1 (b); *Luckey v. Gioia*, 230 Ga. App. 431, 432 (1) (496 SE2d 539) (1998).

[8] See *Sigmon v. Womack*, 158 Ga. App. 47, 50 (1) (279 SE2d 254) (1981).

[9] (Emphasis supplied.) *Southern Bell Tel. &c. Co. v. Coastal Transmission Svc.*, 167 Ga. App. 611, 615 (2) (b) (307 SE2d 83) (1983).

others" were helping Sams write her political ads. But Trammel's affidavit does not say that Miller admitted to helping with the ad in question, much less the "stolen" sentence. Nor does the affidavit say whether the "help" of which Miller spoke involved any control over sentence construction or word choice, as opposed to merely generating ideas, providing logistical support, and the like.

Second, plaintiffs note that Miller was chairman of Sams' campaign committee, which paid for the ad. But plaintiffs have sued Miller individually, not as a representative of the committee, and they offer no rationale for holding him personally responsible for acts of the committee. Although the doctrine of respondeat superior applies in libel cases, so that a principal is liable for the libel committed by his employees in the scope of their employment,[10] plaintiffs essentially seek to hold the *agent* (Miller) liable for the acts of the *principal* (the campaign committee). We find no support for this theory of liability in logic or in case law. Moreover, we find no authority applying the respondeat superior rule in libel cases outside the employment context to unpaid volunteers like Miller.

Third, plaintiffs argue that Miller provided Sams with office space and clerical help and that someone in his office took the finalized ad to the newspaper. As discussed above, however, this kind of logistical help does not show that Miller exercised control over — or was even aware of — the content of Sams' campaign ads and therefore cannot render him liable.

Fourth, plaintiffs point out that Miller gave Sams information about Brown and acted as a liaison between Sams and Brown. While this evidence suggests that Miller may have helped shape Sams' views about Brown's situation and plaintiffs' role therein, it does not signal that Miller controlled the ad's content, including the reference to stealing. We again point out that the only evidence in the record as to the source of the word "stolen" is Sams' testimony that *she* chose it after consulting a dictionary. Sams also testified that Miller never told her that plaintiffs stole Brown's taxes.

Finally, plaintiffs assert that had the trial court granted their motion to compel and forced Miller to answer the questions on which he claimed attorney-client privilege, they would have evidence that Miller published the offending sentence of the ad. As explained above, however, the trial court acted within its discretion in denying the motion to compel. Plaintiffs therefore were not entitled to this additional discovery.

In the absence of any evidence that Miller wrote or exercised

---

[10] See *Gantt v. Patient Communications Systems*, 200 Ga. App. 35, 39 (3) (406 SE2d 796) (1991).

control over the "stolen" sentence in the ad, defendants were entitled to summary judgment.[11]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 16, 2000.

*Law Offices of William G. Hasty, Jr., P.C., William G. Hasty, Jr., Jonathan A. Pope,* for appellants.
*Edwin Marger,* for appellees.

