## A00A1011. CARTWRIGHT v. WILBANKS.
### (541 SE2d 393)

PHIPPS, Judge.

Michael Cartwright appeals an order of summary judgment on his libel claim against J. Alvin Wilbanks. The trial court found that there was no evidence to support the essential element of publication. We agree and affirm.

Cartwright is a teacher in the Gwinnett County school system, and Wilbanks is the superintendent. In March 1997, in his classroom at Shiloh High School, Cartwright received anonymous notes containing death threats. Cartwright referred the matter to school administrators. After an investigation, two students were found to have been involved. The students wrote letters of apology to Cartwright. And according to Cartwright, the only other punishment given the students was three days suspension with the opportunity to make up missed assignments.

Cartwright expected that the matter would be reported to the juvenile court authorities. On January 5, 1998, Cartwright's attorney wrote a letter to Daniel Seckinger, chairman of the Gwinnett County School Board, expressing displeasure with the way the school system had handled the threats. Cartwright thought that a hostile work environment might underlie the failure to take adequate action and that certain faculty members might have been behind the students' actions. He claimed that, contrary to representations made to him earlier, he had learned that no information had been transmitted to the juvenile court authorities. He requested copies of any recorded information transmitted to the juvenile authorities, answers to certain questions, and a hearing. The letter implied that Cartwright might pursue further action if the Board's response to his letter was not satisfactory. Cartwright also made statements to the news media regarding the matter.

The Gwinnett County Board of Education comprises five elected members and is generally responsible for the overall control and management of the Gwinnett County School District. Wilbanks reports to the Board and is responsible for overseeing the school system on a daily basis.

In response to the letter, Seckinger sent a letter to Cartwright's attorney and directed Wilbanks to review the entire matter and submit written findings to the Board.

On January 27, 1998, Wilbanks circulated a memorandum containing his findings to the Board members and Cartwright. Wilbanks stated the following. Cartwright participated in discussions to determine what action should be taken against the students who had confessed to the threats. Cartwright stated that he did not want to testify at a disciplinary hearing and that he could not testify that he had felt threatened. Cartwright consented to alternative disciplinary actions suggested by school administrators. The administrators believed that Cartwright approved of the actions taken and that the matter was resolved. Cartwright was completely supported by the school administration, and his claims regarding lack of support were unsupported and contradicted by a statement he made later. The school system took appropriate actions and followed the proper process. Cartwright misrepresented matters to the news media. He omitted information and made statements that were not true. Cartwright's allegations of faculty involvement in the threats were sweeping and unfounded.

Wilbanks characterized Cartwright's actions as being in "[flagrant] disregard [of] his obligation to professional and ethical conduct" and expressed an expectation that Cartwright's future actions be "truthful, ethical, and professional without fail." The memorandum was placed in Cartwright's personnel file.

Cartwright sued Wilbanks for libel based upon the memorandum. Wilbanks later moved for summary judgment on the grounds that he was officially immune, that Cartwright had failed to present sufficient evidence to establish that the memorandum was libelous, that dissemination of the memorandum to the Board members was privileged, and that dissemination of the memorandum to the Board members with a copy to Cartwright's personnel file did not constitute a publication.

Relying partly on *Kurtz v. Williams*,[1] the trial court found that the memorandum had not been published. Publication is essential to recovery for libel.[2] In *Kurtz*, this court recognized that an exception has evolved in the broad definition of publication:

> when [a] communication is intracorporate, or between members of unincorporated groups or associations, and is heard by one who, because of his/her duty or authority has reason to receive the information, there is no publication of the

---

[1] 188 Ga. App. 14 (3) (371 SE2d 878) (1988).
[2] OCGA § 51-5-1.

allegedly slanderous material. . . . [Cits.][3]

The court further held,

> If a personnel report is written by a supervisor who has the duty to write the report and it is sent to the keeper of personnel records, there is no publication of that report, and any allegedly defamatory material contained therein, no matter how malicious, is not actionable.[4]

1. Cartwright claims three errors. First, he argues that he has been denied due process (i.e., a hearing and an opportunity to clear his name) by application of the rule that no degree of malice makes an intracorporate communication actionable when it is conveyed only to certain persons or placed in one's personnel file. Because Cartwright did not raise a due process claim in his complaint, this issue has been waived.[5]

2. Next, Cartwright seems to argue (a) that the *Kurtz* precedent should be limited to statements regarding job performance and (b) that application of the *Kurtz* precedent should be limited to instances where qualified immunity applies.[6]

(a) *Kurtz*'s application to Wilbanks's memorandum is supported by a long line of cases which hold that no publication occurs where one member of a group shares information with another whose duties or authority give him or her reason to receive such information.[7] There is no question here that Wilbanks sent his memorandum only to the members of the Board of Education and that the members of the Board had reason to receive the information.

(b) In the case of *Luckey v. Gioia*,[8] a dissenting opinion asserted that there are certain circumstances where Georgia's public policy would be best served by requiring speakers to meet the strictures of qualified immunity rather than by protecting their communications under the *Kurtz* line of cases. A majority of this court rejected that position.[9] Cartwright has presented this court with no countervailing public policy argument that compels us to break with the long line of established authority.[10]

3. In his final argument, Cartwright asserts that Wilbanks's

---

[3] 188 Ga. App. at 15.

[4] Id. at 16.

[5] Compare *Buxton v. City of Plant City, Fla.*, 871 F2d 1037 (11th Cir. 1989).

[6] See *Luckey v. Gioia*, 230 Ga. App. 431, 434-435 (496 SE2d 539) (1998) (McMurray, P. J., dissenting).

[7] 188 Ga. App. at 15.

[8] 230 Ga. App. at 434-435.

[9] See id. at 433.

[10] See id.

memorandum became a public record under Georgia's Open Records Act[11] when it was placed in his personnel file. Therefore, Cartwright implies, the memorandum actually was published for purposes of the tort of libel. He relies upon the case of *Buxton v. City of Plant City, Fla.*[12] There, the United States Court of Appeals for the Eleventh Circuit held that a publication had occurred for purposes of the constitutional tort of deprivation of a liberty interest without due process[13] where, pursuant to the Florida Open Records Act, documents regarding an alleged incident of police brutality had been placed in an officer's personnel file and were available to the public.[14]

We recognize that the federal circuit courts are sharply and evenly divided on this issue.[15] But, under Georgia law, precedent is clear that where a supervisor has a duty to report a matter, his report is not considered published for purposes of the tort of libel merely because it has been placed in the subject employee's personnel file.[16]

Summary judgment is proper in the absence of any evidence of publication.[17] Thus, we affirm the trial court's grant of summary judgment to Wilbanks.

*Judgment affirmed. Johnson, C. J., and Smith, P. J., concur.*

DECIDED OCTOBER 13, 2000 —
RECONSIDERATION DENIED DECEMBER 8, 2000 —

*Palmer H. Ansley, Jr.*, for appellant.

*Thompson & Sweeny, Virgil L. Thompson, Jr., E. Victoria Sweeny*, for appellee.

---

[11] OCGA § 50-18-70 et seq.

[12] 871 F2d 1037.

[13] To establish deprivation of a liberty interest without due process, the plaintiff must show: (1) a false statement (2) of a stigmatizing nature (3) attending a governmental employee's discharge (4) made public (5) by the governmental employer (6) without a meaningful opportunity for the employee to clear his/her name. Id. at 1042-1043.

[14] See id. at 1045.

[15] See generally The Publication Debate in Deprivation of Occupational Liberty Claims, 47 Kan. L. Rev. 171, 172 (1998).

[16] See *Kurtz*, 188 Ga. App. at 16; *Davis v. Hosp. Auth. of Fulton County*, 154 Ga. App. 654, 656 (3) (269 SE2d 867) (1980).

[17] *Luckey*, 230 Ga. App. at 433.