A97A0290. MARTIN v. NORTH AMERICAN VAN LINES, INC. et al.
(485 SE2d 815)

BLACKBURN, Judge.

Herbert L. Martin, Jr. sued North American Van Lines, Inc. (North American), Glaze Moving & Storage Company (Glaze), and Lynco, Inc. d/b/a Central Maine Moving & Storage (Lynco) for breach of contract, fraud, and intentional infliction of emotional distress in connection with the move of his household goods. Arguing that Martin's claims were preempted by the Carmack Amendment, 49 USC § 14706 (formerly 49 USC § 11707), the defendants moved for summary judgment. The trial court granted the motion, and Martin appeals.

Martin executed a service agreement with Lynco, an agent of North American, for the move of Martin's belongings from Bucks Harbor, Maine, to Dahlonega, Georgia. Pursuant to this agreement, Martin received a guaranteed, not-to-exceed price of $3,223.10 for the move. This price was based upon a specified number of items shipped and a certain weight for those items. Upon arriving in Dahlonega, Martin was informed that he would have to pay additional sums for the move, as the number of items shipped and the

weight of those items had exceeded the figures used to set the guaranteed price. Martin then sued for breach of the service agreement for failure to honor the guaranteed price. He also claims he was defrauded, and claims the defendants' actions constituted intentional infliction of emotional distress.

1. Relying upon *Moffitt v. Bekins Moving & Storage*, 818 FSupp. 178 (N.D. Tex. 1993), the trial court found that all of Martin's state law claims were preempted by the Carmack Amendment, 49 USC § 14706. The Carmack Amendment establishes the liability of motor carriers and freight forwarders who operate in interstate commerce under receipts and bills of lading. Because the parties in this case had a bill of lading, the trial court found, based upon *Moffitt*, that all of Martin's state law claims were preempted by the Carmack Amendment.

Although *Moffitt* is factually similar, "the United States Supreme Court is the only federal court whose opinions this court is bound to follow." *Phillips v. MacDougald*, 219 Ga. App. 152, 155 (2) (f) (464 SE2d 390) (1995). Furthermore, as there is a split of authority in the federal courts regarding preemption and the Carmack Amendment, see *Sokhos v. Mayflower Transit*, 691 FSupp. 1578 (D. Mass. 1988) (finding certain claims not preempted by the Carmack Amendment), we decline to decide this case on the basis of *Moffitt*.

Instead, it is clear from the Carmack Amendment itself that liability is imposed on a carrier only "for the actual loss or injury *to the property*" caused by the carrier. (Emphasis supplied.) 49 USC § 14706 (a) (1). Here, Martin is clearly not suing for any loss or injury to his property. The Carmack Amendment is therefore inapplicable, and it cannot preempt any of Martin's claims. See *Clark v. Messer Indus.*, 222 Ga. App. 606 (475 SE2d 653) (1996) (breach of contract claim not preempted by Carmack Amendment). The trial court therefore erred in granting summary judgment on this basis.

2. The inapplicability of the Carmack Amendment notwithstanding, a judgment right for any reason will be affirmed on appeal. See *Schneider v. Tri Star Intl.*, 223 Ga. App. 85 (1) (476 SE2d 846) (1996). We must therefore conduct a de novo review of the evidence in order to determine whether summary judgment was appropriate on any of Martin's claims. See *Howell v. Styles*, 221 Ga. App. 781, 784 (4) (472 SE2d 548) (1996). "The standard for granting summary judgment is that the moving party must demonstrate that there is no genuine issue of material fact and that undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." Id.

(a) Summary judgment was appropriate on Martin's claim for breach of contract. Although he argues that North American breached the contract by charging him more than the guaranteed,

not-to-exceed price, the plain language of the service agreement indicates that "the guaranteed price charge includes only those quantities and services indicated as guaranteed." It also states that "additional services requested or required and not guaranteed will be documented and will be added to the guaranteed price." The quantity indicated as guaranteed was 188 items. However, the uncontroverted evidence shows that Martin actually moved approximately 288 items and exceeded the weight limit contained in the contract by 4,000 pounds. The guaranteed price was therefore qualified by the language of the service agreement itself, and North American was within its rights when it charged Martin for the additional items. Martin having presented no other evidence of how North American breached the contract, summary judgment on this issue was therefore proper.

(b) Martin also claims he was defrauded due to misrepresentations regarding the guaranteed price. In support of this claim, he states that although he told a Lynco representative that he would have more than 188 items, the representative still assured him that he could get the $3,223.10 guaranteed price. He contends that the Lynco representative intentionally ignored the volume of goods to be shipped in order to "lowball" him into signing the service agreement, then raised the price on him after the move. The defendants deny these allegations.

"[T]raditionally two actions have been available to a buyer in which to sue a seller for alleged misrepresentation in the sale. The buyer could affirm the contract and sue in contract for breach or he could seek to rescind the contract and sue in tort for alleged fraud and deceit." *City Dodge v. Gardner*, 232 Ga. 766, 768 (208 SE2d 794) (1974). "If the defrauded party elects to affirm the contract and sue for damages for fraud and deceit he is bound by the contract provisions." (Citation and punctuation omitted.) *Orion Capital Partners, L.P. v. Westinghouse Elec. Corp.*, 223 Ga. App. 539, 542 (2) (b) (478 SE2d 382) (1996).

In this case, Martin elected to affirm the service agreement and sue for its breach. He is therefore bound by the agreement's provisions. As discussed above, the agreement provided that "the guaranteed price charge includes only those quantities and services indicated as guaranteed," and the quantity indicated as guaranteed was 188 items. The agreement also stated that "additional services requested or required and not guaranteed will be documented and will be added to the guaranteed price."

As the alleged misrepresentations upon which the fraud claim is based contradict these express provisions of the agreement, Martin cannot assert that he reasonably relied upon such misrepresentations. See, e.g., *Stricker v. Epstein*, 213 Ga. App. 226, 227 (1) (444

SE2d 91) (1994) (dealing with an "entire agreement" clause, stating, "the plaintiff cannot simultaneously affirm a contract which states that no representations were made and allege fraud based on such representations"). For this reason, his fraud claim must fail, and the trial court properly granted summary judgment to the defendants on this issue.

(c) Martin also sued for intentional infliction of emotional distress. He claims that a North American truck driver was rude and hostile to him, and that the driver challenged him to engage in a fist fight. Martin also claims that the defendants withheld his belongings upon arrival in Dahlonega, right before Christmas, and refused to unload the moving truck until he paid them more money. As a result of this behavior, Martin states that he has suffered from stomach-aches, indigestion, fatigue, and irregular sleep.

In order to prevail on a claim for intentional infliction of emotional distress, a defendant's conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Citation and punctuation omitted.) *Turnbull v. Northside Hosp.*, 220 Ga. App. 883, 884 (2) (470 SE2d 464) (1996). "Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." (Citation and punctuation omitted.) *Vidrine v. American Professional Credit*, 223 Ga. App. 357, 360 (3) (477 SE2d 602) (1996).

Although the uncontroverted evidence shows that the driver was rude to Martin, the driver's actions did not rise to the requisite level of egregiousness to sustain this portion of Martin's claim. "[L]iability for intentional infliction of emotional distress clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." (Citation and punctuation omitted.) *Turnbull*, supra at 884-885 (2).

Similarly, Martin's contentions regarding the defendants' refusal to unload the truck until he paid more than the guaranteed price does not state a cause of action for intentional infliction of emotional distress. As set forth above, Martin moved over 4,000 pounds more household goods than included in the guaranteed price calculation, but refused to pay for the additional belongings moved. Under the bill of lading, when Martin refused to pay, the defendants were authorized to sell his property to satisfy a certain portion of the overage. Instead of exercising this right, however, the defendants agreed to accept the guaranteed price plus ten percent of the disputed additional sum under protest, unload Martin's belongings, and bill for the remainder. Inasmuch as the service agreement clearly provided that Martin would be liable for any charges over the guaranteed price which were requested or required, the defendants' actions in this

regard did not exceed all possible bounds of decency.

Martin's separate assertion that the defendants withheld his belongings an unreasonable amount of time near Christmas is not supported by the record. The evidence indicates that Martin closed on his house on December 20, and his belongings were delivered at 8:00 a.m. the following morning. Martin having failed to present a genuine issue of material fact regarding the defendants' intentional infliction of emotional distress, summary judgment on this claim was also appropriate.

*Judgment affirmed. Johnson, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 15, 1997.

Before Judge Wright.

*Snellings & Ferguson, Stanley T. Snellings*, for appellant.

*Nelson, Mullins, Riley & Scarborough, Richard B. North, Jr., Mary C. Cauthen*, for appellees.