A97A1717. KITFIELD et al. v. HENDERSON, BLACK & GREENE et al.
(498 SE2d 537)

ANDREWS, Chief Judge.

David B. Kitfield, Inc. and David B. Kitfield (Kitfield) appeal from the trial court's grant of summary judgment to Henderson, Black & Greene and Kenneth M. Hendricks (HBG). For the reasons which follow, we affirm the judgment of the trial court.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. . . ." *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991). Accordingly, viewed in the light most favorable to Kitfield as non-movant, the record shows that this case arose when HBG notified Kitfield, an independent contractor, that it was terminating him as its sales representative. HBG is a manufacturer of wood columns and building products, and Kitfield had been selling these products since 1963. Kitfield alleges that HBG could not fire him because in 1964, as a result of Kitfield's efforts in converting HBG to a successful manufacturing operation, HBG gave Kitfield the right to act as its sales representative for life.

Kitfield claims his problems with HBG began when Kenneth Hendricks, the president of HBG, asked Kitfield if he would hire Hendricks's son, Kent, and Kitfield complied. Kitfield states that from January 1992, when he hired Hendricks, until November 1993, when Hendricks resigned, he trained Hendricks in all aspects of his business. Kitfield states that he gave Hendricks information on sales techniques and customer lists and introduced Hendricks to all his customers and clients. Kitfield claims that after he was terminated as a representative of HBG and while Hendricks was still working for him, Hendricks, with the tacit approval of HBG, established a

competing business to distribute HBG products in Kitfield's own territory. When Hendricks resigned from Kitfield, Inc. in November 1993, and established his own business, Southland Marketing, Kitfield claims Hendricks took confidential and trade secret information with him and began wrongfully diverting Kitfield's customers and potential customers to Southland Marketing.

Kitfield sued HBG and Kent Hendricks, claiming breach of contract, tortious interference with contractual relations, tortious interference with business relations, breach of fiduciary duty, defamation and libel, tortious actions to put Kitfield out of business, conversion, misappropriation of trade secrets, conspiracy, intentional infliction of emotional distress, and breach of contract to pay commissions. HBG filed a motion for summary judgment which the trial court granted. This appeal followed.

1. In Counts 1 and 14, Kitfield alleges HBG breached its contract with him guaranteeing him a sales representative position for life. Kitfield states in his deposition that he was never an employee of HBG and was always an independent contractor with his own business. He admits he has never had anything in writing on the claimed lifetime contract. Nevertheless, Kitfield bases his claim on a conversation he had in 1964 with one of HBG's founders, Black, who is now deceased. In addition, Kitfield's wife testified in her deposition that she was present at the conversation with Black and also at a meeting a few years later when HBG's vice-president, also now deceased, told her that if anything happened to her husband, the lifetime contract would go to her.

HBG argues that under Georgia's Dead Man's Statute, these conversations are inadmissible as evidence. Although OCGA § 24-9-1 abolished the Dead Man's Statute for transactions occurring on or after July 1, 1979, it provided that former Code § 38-1603 (3) would still apply to transactions or occurrences which took place before July 1, 1979. *Brown v. Williams*, 259 Ga. 6 (375 SE2d 835) (1989). Ga. Code Ann. § 38-1603 (3) stated that in any suit instituted or defended by a corporation, "the opposite party shall not be admitted to testify in his own behalf to transactions or communications solely with a deceased or insane officer of the corporation." Ga. Code Ann. § 38-1603 (3).

Kitfield argues that the evidence is still admissible because Mrs. Kitfield also testified as to the conversations and she is not an "opposite party" under the statute. We disagree. As HBG pointed out, Ga. Code Ann. § 38-1603 (4) provides: "Where a person not a party, but a person interested in the result of the suit, shall be offered as a witness, he shall not be competent to testify, if as a party to the cause he would for any cause be incompetent." Kitfield, Inc. is a party to this suit, and Mrs. Kitfield, as an officer and employee, was also an agent

of Kitfield, Inc. Accordingly, if she were named as a party in the case, she would be incompetent to testify; therefore, her testimony cannot be considered. *Brock v. Gerlach*, 229 Ga. 295 (191 SE2d 38) (1972). As there is no competent evidence in the record that HBG gave Kitfield a contract for life, the trial court did not err in granting summary judgment to HBG on the contract claims.[1]

2. Next, Kitfield claims the trial court erred in granting HBG summary judgment on the claims of defamation and libel. After HBG terminated Kitfield, HBG notified Kitfield's customers that he had retired from the business of selling building products. HBG admits Kitfield did not retire, but claims that it was making a gesture of courtesy towards a long-time business associate in announcing Kitfield had "retired" instead of telling Kitfield's customers that HBG had fired him.

The Code defines libel as "a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." OCGA § 51-5-1. We fail to see how announcing to Kitfield's customers that he had retired[2] could rise to the level of "exposing him to public hatred, contempt, or ridicule." Moreover, we agree with HBG that the statements were privileged in that they were made with a good faith intent on the part of HBG to protect its interest with its customers. OCGA § 51-5-7 (3). In order to overcome this privilege, Kitfield must show the statement was made with actual malice. OCGA § 51-5-5; *Williams v. Cook*, 192 Ga. App. 811, 812 (386 SE2d 665) (1989). We find no evidence of actual malice in the record.

3. Next, Kitfield claims the trial court erred in granting summary judgment to HBG on Kitfield's claim for tortious interference with contractual relations. As we have already determined that Kitfield is unable to show the existence of a contract between him and HBG, we do not address the claim for tortious interference with contractual relations except as to Kitfield's claim that HBG tortiously interfered with the employment contract between Kent Hendricks and Kitfield. Kitfield claims that there is a jury question as to whether HBG "wrongfully solicited the employment of Kent Hendricks."

To establish a cause of action for tortious interference with busi-

---

[1] Of course, under Georgia law, "(a) contract for permanent employment has been held to be a contract to continue indefinitely, and terminable at any time by either of the parties." *Ely v. Stratoflex*, 132 Ga. App. 569, 571 (208 SE2d 583) (1974). In this case, however, there is some evidence that Alabama substantive law applies to the employment contract. We need not reach this issue in light of our determination that there is no admissible evidence of a lifetime contract.

[2] Kitfield was in his early seventies at the time.

ness or contractual relations, a plaintiff must show that the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury. *NationsBank v. SouthTrust Bank*, 226 Ga. App. 888, 892 (487 SE2d 701) (1997). "The privilege of fair competition protects the actions of one who . . . solicits a competitor's at will employees provided the standards set forth in Restatement of Torts, § 768 are followed. Those standards are: (1) the relation concerns a matter involved in the competition between the actor and the competitor; (2) the actor does not use improper means; (3) the actor does not intend thereby to create or continue an illegal restraint of competition; and (4) the actor's purpose is at least in part to advance its interests in competition with the other." (Citations, punctuation and footnote omitted.) *Contractors' Bldg. Supply v. Gwinnett Sash & Door*, 199 Ga. App. 38, 39 (403 SE2d 844) (1991), disapproved on other grounds, *Porter v. Felker*, 261 Ga. 421 (405 SE2d 31) (1991). See also *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 348 (392 SE2d 860) (1990). "Such wrongful means generally involve predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." Id. at 349.

Here, the only evidence Kitfield cites to in support of this claim are conversations between Kenneth Hendricks and his son Kent in which the father told Kent about firing Kitfield and in which Kent stated he would like to be considered for the job of representing HBG. Kent's father admitted to discussing plans for the future with his son and also informing him that HBG would be terminating Kitfield as their sales representative. These were personal conversations between a father and son, and Kitfield cannot show that Kenneth Hendricks acted improperly or without privilege in talking to his son, or that these conversations were malicious or carried on with the intent to injure Kitfield. Accordingly, this evidence does not establish any of the elements of a cause of action for tortious interference with an employment relationship. *Nationwide Advertising Svc. v. Thompson Recruitment &c.*, 183 Ga. App. 678, 679-680 (359 SE2d 737) (1987); see also *Contractors' Bldg. Supply*, supra at 39. Moreover, before HBG terminated Kitfield, Kent Hendricks testified that he told Kitfield he needed more money and asked for a percentage of the sales. When Kitfield refused, Hendricks said he began looking at other, more lucrative opportunities. There was no issue of fact to go to a jury on this claim of tortious interference with contractual relations.

4. Next, Kitfield claims there was sufficient evidence to create a jury issue on his claim of tortious interference with business rela-

tions. As previously stated, "[t]o establish tortious interference with a business relationship, [Kitfield] must show that [Hendricks and HBG] (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with [Kitfield], and (4) for which [Kitfield] suffered some financial injury." (Punctuation omitted.) *Beeson v. Crouch*, 227 Ga. App. 578, 582 (490 SE2d 118) (1997).

Kitfield cites to no case law in support of his argument that Hendricks and HBG tortiously interfered with Kitfield's business relationships with his other customers, and we find none. As discussed in the preceding enumerations, we find no improper conduct on the part of Kent Hendricks and HBG. HBG had an absolute right to terminate Kitfield and Hendricks had an absolute right to set up a business in competition with Kitfield's. There can be no liability for interference with business relations when the alleged interference is caused by the exercise of an absolute right. *West Va. Glass &c. Co. v. Guice & Walshe, Inc.*, 170 Ga. App. 556, 559 (317 SE2d 592) (1984); *J. C. Penney Co. v. Davis & Davis, Inc.*, 158 Ga. App. 169, 171 (279 SE2d 461) (1981).

5. Kitfield claims the trial court erred in granting summary judgment to HBG on his claims of conversion and misappropriation of trade secrets. OCGA § 16-8-4 (a) provides that a person commits theft by conversion when, after having lawfully obtained the property of another, he knowingly converts this property to his own use in violation of an agreement or legal obligation. Kitfield claims that Kent Hendricks converted and misappropriated confidential information while he worked for Kitfield. Kitfield argues that while Hendricks worked for him, Hendricks "developed various marketing tools and sales analyses and accumulated other information relating to Kitfield's customers" and entered this information on his personal computer.

This enumeration of error is without merit. Kitfield himself admitted in his deposition that HBG had these same customer lists. In fact, when asked "You have no evidence that HBG obtained any information whatsoever that it did not already have; correct?" Kitfield answered, "I have no evidence, that's correct." Q: "[T]hey had the contact names, they had the customers; correct?" A: "Right."

In order to recover for misappropriation of an idea, one must establish a property right or protectable interest in the work product. *Wilson v. Barton & Ludwig, Inc.*, 163 Ga. App. 721, 723 (296 SE2d 74) (1982). "A trade secret is not entitled to the status of a property right if it pertains to matters which are generally known in the trade." (Punctuation omitted.) Id. As Kitfield had made no effort to protect this information, he cannot claim misappropriation of the

customer lists. *Smith v. Mid-State Nurses,* 261 Ga. 208 (403 SE2d 789) (1991).

Moreover, any personal or subjective knowledge or other skills gained by Hendricks while working for Kitfield do not come under the Trade Secrets Act and their use may be prohibited only through restrictive covenants in an employment contract. *DeGiorgio v. Megabyte Intl.,* 266 Ga. 539, 540 (468 SE2d 367) (1996); *Outside Carpets v. Indus. Rug Co.,* 228 Ga. 263 (185 SE2d 65) (1971). There was no covenant not to compete in Kent Hendricks's employment contract.

6. Next, Kitfield claims the trial court erred in granting HBG summary judgment on the claim of intentional infliction of emotional distress. We find no error.

The mere termination of employment does not authorize a recovery for intentional infliction of emotional distress. *Borden v. Johnson,* 196 Ga. App. 288, 290-291 (395 SE2d 628) (1990). In order to sustain a cause of action, the defendant's actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff. *Moses v. Prudential Ins. Co.,* 187 Ga. App. 222, 224 (369 SE2d 541) (1988). Kitfield presents absolutely no evidence of any actions by HBG or Hendricks that were even remotely capable of being so terrifying or so insulting as to humiliate, embarrass or frighten him. Id. at 225. The only evidence on this issue cited to us is Kitfield's statement that he had been to see a doctor because he felt "tense" and "stiff." However, Kitfield also admitted to being 72 years old and having arthritis. There is no merit to this enumeration.

7. Kitfield also claimed there was a breach of fiduciary duty by Kent Hendricks while he was working for Kitfield. Kitfield cites us to no evidence in the record in support of this claim, merely arguing conclusory allegations in his appellate brief. In any event, an employee who is making plans to enter a competing business while still employed does not breach a fiduciary duty unless he fails to fulfill his assigned duties. *Nilan's Alley v. Ginsburg,* 208 Ga. App. 145 (430 SE2d 368) (1993). Kent Hendricks testified in his deposition that he carried out his duties up until the time he resigned from Kitfield, Inc. While Kitfield alleges that Kent Hendricks was planning to take the HBG account from Kitfield and start a competing business, he does not show in what manner Hendricks did not carry out his assigned work. An employee is entitled to make arrangements to set up a rival business while still employed. *E. D. Lacey Mills, Inc. v. Keith,* 183 Ga. App. 357, 362-363 (359 SE2d 148) (1987).

8. The trial court properly granted summary judgment to HBG on Kitfield's claims of conspiracy and tortious actions to put him out of business. In light of our holdings above, we need not address this enumeration of error. This count is merely a restatement of the claim

in the tortious interference counts described above. *Rome Indus. v. Jonsson*, 202 Ga. App. 682, 684 (415 SE2d 651) (1992); *U3S Corp. of America v. Parker*, 202 Ga. App. 374, 379 (414 SE2d 513) (1991).

*Judgment affirmed. Blackburn, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED FEBRUARY 26, 1998 —
RECONSIDERATION DENIED MARCH 12, 1998

*Shapiro, Fussell, Wedge, Smotherman & Martin, Richard A. Kaye, Adam R. Gaslowitz*, for appellants.

*Schulten, Ward & Turner, W. Scott Schulten, Kevin L. Ward, David L. Turner*, for appellees.