### A98A0735. AMSTADTER v. LIBERTY HEALTHCARE CORPORATION.
#### (503 SE2d 877)

RUFFIN, Judge.

Robert L. Amstadter, M.D. sued Liberty Healthcare Corporation ("Liberty Healthcare") for breach of contract, wrongful termination, violations of his substantive and procedural due process rights, defamation, conspiracy, bad faith, and intentional infliction of emotional distress. Liberty Healthcare moved for summary judgment and Amstadter in turn filed a motion for partial summary judgment regarding his breach of contract claim. The trial court denied Amstadter's motion for partial summary judgment and granted Liberty Healthcare's motion for summary judgment. Amstadter appealed, and for reasons which follow, we affirm.

" 'To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.' *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review is de novo. *Bandy v. Mills*, 216 Ga. App. 407 (454 SE2d 610) (1995)." *Walker v. Virtual Packaging, LLC*, 229 Ga. App. 124 (493 SE2d 551) (1997).

Viewed in the light most favorable to Amstadter, the record shows that Amstadter entered into a written "subcontract agreement" with Liberty Healthcare on July 3, 1995. The contract designates Liberty Healthcare as the contractor and Amstadter as the subcontractor, and further establishes that Amstadter will act as an independent contractor. The contract states that Liberty Healthcare has agreed to provide physicians to Central State Hospital (the "Hospital").[1] Amstadter, a practicing psychiatrist with 35 years expe-

---

[1] In 1990, Liberty Healthcare contracted with the Hospital and the State of Georgia to

rience, agreed in the contract to provide the Hospital with medical services for a term of three years unless the contract is otherwise canceled. The contract expressly states that Amstadter must be acceptable to the Hospital. In addition, the contract provides that either Amstadter or Liberty may terminate this agreement at any time for "cause." Finally, the contract provides that the Hospital's demand for the replacement of the subcontractor for any reason shall constitute "termination for cause."

Amstadter commenced his employment under the contract on September 1, 1995. According to Amstadter's affidavit, Liberty Healthcare placed him on "administrative leave" on October 10, 1995. On October 12, 1995, the Hospital informed Liberty Healthcare that Amstadter had "experienced difficulties in adjusting to his assignment and to administrative guidelines," and as a result, the Hospital requested Amstadter be "reassigned by Liberty Healthcare from [the Hospital]." Subsequently, Amstadter received a letter from Liberty Healthcare which stated that his contract was terminated pursuant to the Hospital's request that he be removed, but did not provide any further explanation. In addition, the letter stated that Amstadter would be reported to the National Practitioner Data Bank ("NPDB").[2] Amstadter claimed in his complaint that a report to NPDB is intended to affect the physician's license that is involved. Moreover, Amstadter claimed that Liberty Healthcare made his employment search difficult by its failure to respond to potential employers' inquiries about Amstadter's qualifications. However, neither Liberty Healthcare nor the hospital ever filed a report with the NPDB.

Following Amstadter's termination and search for new employment, he sued Liberty Healthcare, claiming that Liberty Healthcare improperly terminated his contract and intentionally inflicted emotional distress on him by terminating his employment without cause, notice or warning, by withholding Amstadter's earned compensation, by threatening to "ruin" Amstadter, and by directly thwarting Amstadter's efforts to find and obtain comparable employment.

Amstadter appeals the trial court's grant of Liberty Healthcare's motion for summary judgment, contending that material issues of fact remain concerning his claims for breach of contract and intentional infliction of emotional distress.

1. In his breach of contract claim, Amstadter asserts that the Hospital did not request his removal, and consequently Liberty

---

provide services of duly qualified physicians to the Hospital, and such contract has subsequently been renewed and was effective when Amstadter contracted with Liberty Healthcare.

[2] This federal instrumentality is codified as 42 USCA § 11101 et seq.

Healthcare improperly terminated his contract. In support of this contention, Amstadter asserts that the contract provides for termination for "cause", and that "cause" is found where the Hospital, not Liberty Healthcare, "requires the replacement [of Amstadter] for any reason." Amstadter argues that because the Hospital requested that he be reassigned rather than removed, there was no termination for cause. Liberty Healthcare asserts that the terms are interchangeable and the Hospital's request clearly effected his termination.

"In summary judgments involving contract cases, the construction of a contract is a question of law for the trial court 'where the language of a contract is clear and unambiguous and capable of only one reasonable interpretation as applied to the subject matter.'" *Nolley v. Maryland Cas. Ins. Co.*, 222 Ga. App. 901, 903 (3) (476 SE2d 622) (1996). "The cardinal rule of contract construction is to ascertain the intention of the parties. OCGA § 13-2-3. Where the intent of the parties is clear and unambiguous, the court will look to the contract alone to determine the parties' intent." *Jones v. Destiny Indus.*, 226 Ga. App. 6 (2) (485 SE2d 225) (1997). Thus, "[a] contract should be construed by examining the agreement in its entirety and not merely isolated clauses and provisions thereof. [Cit.]" Id.

In this instance, the language of the contract is clear and unambiguous. The contract sets forth that it is the only contract between Liberty Healthcare and Amstadter and that his services are being offered to the Hospital on the condition that he is acceptable to the Hospital. The express language of the contract further provides that termination for cause occurs where the Hospital requires the replacement of Amstadter for any reason. The Hospital's request to have Amstadter reassigned has the same effect as replacing him: he is terminated from his work at the Hospital. The Hospital clearly expressed to Liberty Healthcare that "Amstadter has experienced significant difficulties in adjusting to his assignment and to administrative guidelines stated for him despite the efforts of his clinical supervisor, Joel Brende, M.D.," and that the Hospital wished Amstadter to be reassigned. The only reasonable interpretation of the Hospital's request is that Amstadter discontinue working at the Hospital. Liberty Healthcare responded to the Hospital's request in accordance with the contract and the intent of the parties. Accordingly, the trial court did not err in granting Liberty Healthcare's motion for summary judgment as to Amstadter's breach of contract claim.

2. Amstadter also contends that the trial court erred in granting Liberty Healthcare's motion for summary judgment on the claim of intentional infliction of emotional distress. We find no error.

A claim for intentional infliction of emotional distress has four elements: (1) the conduct was intentional or reckless; (2) the conduct

was extreme and outrageous; (3) the conduct caused emotional distress and (4) the emotional distress was severe. *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499 (469 SE2d 776) (1996). "The mere termination of employment does not authorize a recovery for intentional infliction of emotional distress. [Cit.] In order to sustain a cause of action, the defendant's actions must have been so terrifying as naturally to humiliate, embarrass or frighten the plaintiff. [Cit.]" *Kitfield v. Henderson, Black & Greene*, 231 Ga. App. 130, 135 (6) (498 SE2d 537) (1998). A claim for intentional infliction of emotional distress will not succeed where the defendant uttered "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. [Cit.]" *Jenkins v. General Hospitals of Humana*, 196 Ga. App. 150, 152 (395 SE2d 396) (1990).

Additionally, we have held that neither the filing of a lawsuit or threat to file a lawsuit is sufficient to establish humiliating, embarrassing, or frightening conduct which will give rise to a claim of intentional infliction of emotional distress. *Rolleston v. Huie*, 198 Ga. App. 49, 51 (2) (400 SE2d 349) (1990). See also *Moses v. Prudential Ins. Co.*, 187 Ga. App. 222 (369 SE2d 541) (1988) (holding that a telephone threat to resort to physical violence and to litigation does not state a claim).

In the instant case, the evidence demonstrated that Liberty Healthcare "threatened" to "ruin" Amstadter when Liberty Healthcare told Amstadter that they intended to report him to NPDB. This "threat" was made again in writing in his letter of termination. Amstadter stated in his affidavit that Liberty Healthcare failed to respond to potential employers' inquiries about him, and consequently made it difficult for him to obtain substitute employment. Amstadter remained out of work for a six-month period. Amstadter also stated that he had never been summarily terminated from employment and threatened in this manner. Amstadter felt a "precipitous state of shock, trauma and mental depression upon his sudden termination from [the Hospital]." In addition, Amstadter stated that in response to his loss of employment and threat of being reported to the NPDB, he felt "dejection, depression, rejection, [a] loss of self-esteem and [an] inability to support himself as well as panic at the threat of potential consequences stemming from [sic] [the] report to the NPDB."

Evidence of Amstadter's termination and precipitating results is construed as no more than "mere insults and indignities" and therefore, does not sufficiently state a claim for intentional infliction of emotional distress. *Kitfield*, supra. In addition, we find the "threat" to report Amstadter to the NPDB is akin to threatening a civil lawsuit, and as such, does not support Amstadter's claim of intentional infliction of emotional distress. *Rolleston*, supra. Accordingly, the

trial court did not err in granting Liberty Healthcare's motion for summary judgment on this issue.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED JULY 2, 1998.

*Lipshutz, Greenblatt & King, Edward L. Greenblatt*, for appellant.

*Hall, Booth, Smith & Slover, Rush S. Smith, Jr., Phillip E. Friduss*, for appellee.