A00A1037. KRAMER v. KROGER COMPANY, INC. et al.
(534 SE2d 446)

McMurray, Senior Appellate Judge.

Alicia Rechelle Kramer, formerly an employee of Kroger Company, Inc. ("Kroger"), filed this action against Kroger and two of its employees, store manager Chuck Rogers and assistant manager Brian Rouse, alleging she was wrongfully forced to resign after being falsely accused of theft. Kramer also asserted claims of libel, slander, and intentional infliction of emotional distress. Summary judgment was granted to defendants on all claims except slander against Rouse. Kramer appeals. *Held*:

1. Kramer, proceeding pro se, contends that genuine issues of fact remain on her claim that Kroger wrongfully forced her to resign.

We do not agree.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684).

Viewed in a light most favorable to Kramer, the evidence shows that Kroger hired her as a cashier in December 1996. Kramer became a floor supervisor in February 1997. Her duties included supervising the cashiers and supplying them with change from the cash drawer, which Kramer maintained.

Kramer deposed that in May, she suggested to Rogers and Rouse that the store should enlarge its kosher foods section. Kramer averred that Rouse responded: "send them over to the Townlake Kroger because that's where all the Jews lived with their money." Rouse "thought it was humorous." Kramer was not amused. She informed Rouse that she was Jewish. He walked away. Kramer deposed that Rouse became more abrupt in his dealings with her after this encounter and refused to respond to her requests for assistance during peak business hours. Kramer also testified that Rouse reassigned clerks to perform duties different from the tasks she had assigned them to perform and then complained when the tasks were not complete. Rouse denied the allegations.

Kramer's next encounter with management, in mid-June, involved her recommendation to a member of management that a certain African-American cashier be trained as a floor supervisor because of her demonstrated proficiency. The supervisor stated the cashier "wasn't going to be there very long [because] they didn't want any of her kind around making top pay." Kramer deposed that she asked Rouse for his thoughts about the cashier and he "called her [the cashier] an uppity ni—r," stated they intended to "get rid of her," and noted "they already had their token ni—r." Kramer did not report this incident to anyone "at that time." The cashier's employment was in fact terminated.

The incident upon which this action is premised happened on July 29, 1997, when $300 was reported missing from a cash register. Kramer's initials had been placed on the missing "cash drop." When she reported for work on July 31, Rogers suspended Kramer indefinitely pending an investigation. This information was placed in her

personnel file in the form of a "constructive advice record."

The investigation revealed that another employee had signed Kramer's initials to the cash register tape in question after being misinformed that Kramer had received the cash drop. Kroger then offered to reinstate Kramer at her former salary, pay her lost wages, apologize, and reprimand Rouse, who had made disparaging remarks about her (see Division 2 (a), infra). However, Kroger wished to reassign Kramer to the position of grocery clerk.

Initially, Kramer agreed to return to work. However, upon discovering that she would be required to sign a waiver and release and that her reassignment would be permanent, Kramer told Rogers she "could not work for a company that was devious and deceitful. . . ."

Having filed a grievance under the collective bargaining agreement negotiated with Kroger by the United Food & Commercial Workers Union, Local 1996, Kramer contacted her Union representative, Hardin. On September 15, 1997, Kramer, Hardin, and Rogers executed a letter stating in pertinent part:

> In response to the Company's offer to reinstate Ms. Kramer to her former position, with back-pay . . . Ms. Kramer has requested to resign from her position with The Kroger Co. The Company agrees to the following:
> 1. Ms. Kramer will receive a one-time payment of $1,040.00[1] less legal deductions.
> 2. The Company accepts Ms. Kramer's resignation from her position. . . .

"In Georgia one cannot state a claim for wrongful termination when it is undisputed that the employment was terminated incident to resignation. [Cits.] This is true even if the employee resigned under pressure. . . ." *Clark v. Chick-Fil-A*, 214 Ga. App. 758, 759 (1) (449 SE2d 313).

As the letter agreement reflects, it is undisputed that Kramer chose to resign; she was not terminated. However, Kramer alleges she executed the resignation letter "under false pretenses." She asserts Kroger and its employees forced her to resign by wrongfully suspending her, making malicious statements about her, and attempting to force her to sign a release.[2] Kramer also contends she was accused of stealing in retaliation for her complaint to Rogers that Kroger's termination of the African-American cashier was

---

[1] The payment reflected Kramer's lost wages.

[2] Kramer also alleges that Hardin assured her the agreement would not affect her right to sue Kroger. However, Kramer's unhappiness with her Union representative cannot assist her in her claim against Kroger or its employees.

racially motivated.[3] Therefore, Kramer contends that the question of her resignation's voluntariness is a jury issue.

> One may not void a contract on grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement.

(Citation and punctuation omitted.) *Tidwell v. Critz*, 248 Ga. 201, 204 (1) (282 SE2d 104).[4]

In the case sub judice, it is uncontroverted that Kroger offered Kramer a position at the same salary she earned prior to her suspension. She chose to resign and settle her Union grievance instead. Kramer's allegations of coercion are insufficient, as a matter of law, to raise a jury question as to whether her resignation was voluntary.[5] Accordingly, summary judgment was properly granted against Kramer on her claim for wrongful termination.[6]

2. In two enumerations of error, Kramer contends that the trial court erred in granting summary judgment on her defamation claims against Kroger. We disagree.

(a) We first address Kramer's slander claims. Kramer alleges that Rouse told co-employees that she was a thief and did drugs. As noted above, the trial court found that a jury question exists as to whether Rouse slandered Kramer.

Kramer asserts that Kroger can be held liable for Rouse's allegedly slanderous statements. The law is contrary to her position.

> The doctrine of respondeat superior does not apply in slander cases, and a corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff.

*Lepard v. Robb*, 201 Ga. App. 41, 42 (1) (410 SE2d 160):

Kramer offered no evidence to indicate that Kroger directed or authorized Rouse to make the statements in question. Kroger was properly granted summary judgment on this claim.

(b) Next, we address Kramer's claim that Kroger libeled her by

---

[3] Kramer apparently has filed a federal lawsuit alleging she was accused of stealing in retaliation for her opposition to the cashier's termination.

[4] Accord *Miller, Stevenson & Steinichen, Inc. v. Fayette County*, 190 Ga. App. 777 (1) (380 SE2d 73).

[5] *Bailey v. Horace Mann Ins. Co.*, 207 Ga. App. 633 (428 SE2d 604).

[6] *Clark v. Chick-Fil-A*, supra.

placing a report of the cash shortage in her personnel file.

Publication is an indispensable element of libel. OCGA § 51-5-1 (b). Under OCGA § 51-5-3, a libelous writing is published "as soon as it is communicated to any person other than the party libeled." However, "the publication of allegedly defamatory information in the course of an employer's investigation of an employee's job performance, when made to persons in authority, is not 'publication' within the meaning of OCGA § 51-5-1 (b)." *Luckey v. Gioia*, 230 Ga. App. 431, 432 (1) (496 SE2d 539).

Therefore, the issue is whether the personnel report was communicated to persons other than those "in authority" at Kroger. "Here, the record is devoid of any evidence that the [report] was shown to anyone who did not, by virtue of his job, need to be informed of all the factors involved in the decision to [suspend Kramer]." *Lepard v. Robb*, supra at 43.

Finally, Kramer argues that Kroger placed the information in the report maliciously, knowing that she had not taken the missing $300.

> Contrary to [appellant]'s assertion, the exception to the publication rule is not a conditional defense destroyed by proof of malice but, rather, an element of the tort of slander or libel. Whether the communication was made maliciously and with knowledge of falsity is immaterial when there has been no publication, for without publication there is no libel or slander.

*Kurtz v. Williams*, 188 Ga. App. 14, 16 (3) (371 SE2d 878).

Accordingly, summary judgment was properly granted on the libel claim.

3. No genuine issue of material fact remains on Kramer's claim of intentional infliction of emotional distress.

(a) Regarding Kroger, Kramer alleges her credibility and integrity have been impugned by the investigation of the cash shortage, causing severe depression.

> "[T]he burden which the plaintiff must meet in order to prevail in this cause of action is a stringent one." *Ingram v. JIK Realty Co.*, 199 Ga. App. 335, 336 (1) (404 SE2d 802) (1991). To prevail, a plaintiff must demonstrate that: (1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. *Amstadter v. Liberty Healthcare Corp.*, 233 Ga. App. 240, 242-243 (2) (503 SE2d 877) (1998). The defendant's conduct "must be so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." (Punctuation omitted.) *Martin v. North American Van Lines*, 226 Ga. App. 187, 190 (2) (c) (485 SE2d 815) (1997).

*Frank v. Fleet Finance &c.*, 238 Ga. App. 316, 318 (518 SE2d 717).

Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. [Cit.] If the evidence shows that reasonable persons might find the presence of extreme and outrageous conduct and resultingly severe emotional distress, the jury then must find the facts and make its own determination.

*Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835).

We cannot say that reasonable persons would find Kroger's conduct toward Kramer atrocious or utterly intolerable. The fact that Kramer's initials appeared on the missing "cash drop" gave Kroger reasonable cause to suspend and investigate her. After realizing Kramer had not taken the money, Kroger offered to drop the suspension, apologize, pay her lost wages, and permit her to return to work. Kroger imposed two conditions upon its offer: Kramer would be required to accept a demotion to grocery clerk and to execute a waiver and release of all claims. She refused to accept these conditions and resigned instead. We cannot say that a demotion is reasonable as a matter of law. However, "[t]he personnel action taken by appellee was not such to shock the conscience or offend hardened sensibilities . . . ; nor did it constitute the kind of egregious conduct necessary to state a claim for intentional infliction of emotional distress." (Citation omitted.) *Floyd v. Chaffin*, 201 Ga. App. 597, 600 (3) (411 SE2d 570).[7]

(b) Contrary to Kramer's assertions, the trial court's discussion of the evidence on this issue was not improper comment; it was a proper exercise of the trial court's duty to determine whether Kroger's conduct rose to the required level of outrageousness and egregiousness.

(c) Regarding Rouse, Kramer claims the defamatory statements he allegedly uttered were so insulting and malicious as to constitute

[7] See also *Amstadter v. Liberty Healthcare Corp.*, 233 Ga. App. at 242-243 (2), supra (mere termination from employment does not constitute intentional infliction of emotional distress); compare *Davis v. Copelan*, 215 Ga. App. 754, 766 (6) (452 SE2d 194) (whether abusive, intimidating termination interviews constituted emotional distress held jury issue).

intentional infliction of emotional distress. Insofar as any such statements were directed to third parties,

> "even malicious, wilful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed toward the plaintiff." *Ryckeley v. Callaway*, 261 Ga. 828, 829 (412 SE2d 826) (1992). Defamatory remarks made to others or to the public in general are classic examples of conduct that, though harmful to the plaintiff, was directed toward the hearer of the statements, not to the plaintiff, and thus is not actionable as intentional infliction of emotional distress.

*Lively v. McDaniel*, 240 Ga. App. 132, 134 (2) (522 SE2d 711). Kramer further alleges that prior to a meeting held at Kroger to discuss her Union grievance, she overheard Rouse tell others she could not be trusted with money. Even if such comments were directed toward Kramer, "[d]efamatory or derogatory remarks regarding one's employment generally do not rise" to the level of "extreme and outrageous [conduct] (i.e., atrocious and utterly intolerable)." Id. Rouse's alleged statement fails to meet the threshold of outrageousness.

Finally, while it is beyond question that the antiSemitic and racial slurs allegedly expressed by Rouse are vile, atrocious, and utterly intolerable in a civilized society, Kramer does not allege these comments caused her to suffer emotional distress. Accordingly, we are constrained to hold that no fact issue remains on this claim.

4. Any error committed by the trial court in rendering its order on defendants' summary judgment motion prior to ruling on Kramer's motion to compel discovery was harmless. The materials sought — a surveillance videotape, cash register tapes, and various accounting records — were relevant only to the issue of Kramer's innocence in the matter of the missing money, which Kroger apparently conceded.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED APRIL 26, 2000 —
RECONSIDERATION DENIED MAY 11, 2000 —

Alicia R. Kramer, *pro se.*
*Wimberly & Lawson, Paul Oliver,* for appellees.